BEVAN, ADMX., APPELLEE, *v.* THE CENTURY REALTY CO., APPELLANT.

(Decided January 11, 1940.)

*Mr. John Ruffalo,* for appellee.
*Messrs. Harrington, Huxley & Smith,* for appellant.

Montgomery, J. There is presented to us an appeal from the judgment of the Common Pleas Court, rendered in accordance with a previous verdict of a jury, awarding damages to plaintiff, on two causes of action, one for the wrongful death of her decedent, the other for the pain and suffering sustained by decedent between the date of his injury and his death, a period of approximately three months. The judgment was for $10,000 on the first cause of action, and for $2,000 on the second cause of action.

The decedent, an employee of a lessee in charge of a department store, fell or stepped backward on the mezzanine floor into an elevator shaft and was precipitated to the basement of the building. The outside doors to this shaft were ordinary room doors, opening outward, had been opened by some one prior to the injury, and at that time the elevator was not at that floor. The defendant was the owner of the building, but not occupying it.

The defendant contends that it was entitled to a directed verdict on three grounds: First, that the evidence discloses that decedent's injuries were sustained as the result of his sole negligence; second, that the things complained of did not constitute the proximate cause of decedent's injuries; and, third, that under the evidence there was no liability imposed upon the defendant.

As to the first and second grounds listed, suffice it to say that a study of this record convinces us that these were questions for the jury, that upon both of these propositions there was sufficient evidence to justify the verdict which was rendered, and both issues were submitted properly to the jury.

The third proposition is the one upon which defendant really relies and which it strenuously urges.

It is the general rule that the lessor of a building out of possession and control is liable in the event of any

agreement, or liability created by statute, and not otherwise, to a third person receiving injuries, if the defect was the proximate cause of the injury. *Stackhouse* v. *Close,* 83 Ohio St., 339, 94 N. E., 746; *Marqua* v. *Martin,* 109 Ohio St., 56, 141 N. E., 654; *Tvedt* v. *Wheeler,* 70 Minn., 161, 72 N. W., 1062; *Tralle, Admx.,* v. *Hartman Furniture & Carpet Co.,* 116 Neb., 418, 217 N. W., 952.

In Ohio we have a statute directly in point, to wit, Section 1027, General Code, which is directed to both owners and operators of shops and factories for the purpose of preventing injury to persons who come in contact with machinery or any part thereof. Subdivision 4 of this section is in the following language:

"4. They shall case in all unused openings of elevators and elevator shafts and place automatic gates or floor doors on each floor where entrance to the elevator carriage is obtained. They shall keep such gates or doors in good repair and examine frequently and keep in sound condition the ropes, gearing and other parts of elevators."

Then we have the rules and regulations of the Industrial Commission of Ohio, the admissibility in evidence of which we will discuss hereinafter, but which seem to us clearly to be directed toward the owner of the building as well as the lessee or employer. Under Section 871-21, General Code, this commission is vested with power and jurisdiction over every employment and place of employment and every other building and establishment as far as the same may be necessary adequately to enforce all laws and orders for the protection of the life, health, safety and welfare of employees, etc. Section 871-22, General Code, imposes the duty upon the Industrial Commission of enforcing laws governing not only employment, but places of employment.

In other words, it is our view that the Industrial Commission was formed and its powers imposed upon

it not only to enforce laws, rules and regulations concerning the relations of employer and employee, but to enforce laws, rules and regulations concerning the places of employment provided; that this Industrial Commission is really an agent of the state of Ohio designated to enforce general laws applicable and rules and regulations properly enacted.

Section 871-25, General Code, provides that all orders of the Industrial Commission of Ohio in conformity with law shall be *prima facie* reasonable and lawful and shall be valid and in full force until found otherwise in an action brought for that purpose.

In the instant case the rules of the Industrial Commission clearly applicable provided that:

"(3) Freight elevators already installed, if equipped with doors instead of gates, which doors are made of solid wood or metal, or of wire glass, grille work or screen, as specified below for passenger elevators will be permitted if such doors are equipped with self-closing locks which cannot be opened from the outside except by means of a key and provided such elevators are operated by an operator stationed in the car."

The evidence is clear that the elevator in question was not so equipped, and, as heretofore indicated, the question of whether the failure properly to equip the elevator was the proximate cause of decedent's injury and death became a question for the jury and was properly submitted to the jury.

Clearly, the defendant below was not entitled to a directed verdict.

The defendant contends further that, if the court should find against it upon its claimed right to a directed verdict, the judgment of the lower court, nevertheless, should be reversed for many assigned reasons. We have given attention to all of these reasons, but most of them have no merit in them and, ex-

cept as herein discussed, we see occasion for no further comment about them.

The trial court permitted to be introduced in evidence the certificate of operation authorized for this elevator. However, it refused to give a certain special request to charge, offered by the defendant, as to the force and effect of this certificate, and in its subsequent charge to the jury the court limited strictly the application and force of this certificate. Its conduct with reference to this matter is approved. This certificate went no further than to indicate that the condition of this elevator was such as to justify its operation. It did not indicate approval by the state authorities of the original construction, or of the doors leading to the elevator shaft. Even if it had done so, it would not be conclusive.

Much of the argument of counsel in open court, and much of the briefs presented, go to the question of the admissibility in evidence of the rules and regulations of the Industrial Commission as adopted in 1924 and later in 1933. The record in this connection discloses an anomalous situation. It appears from the bill of exceptions that the plaintiff rested her case. Thereupon the defendant moved the direction of a verdict on its behalf. Thereupon counsel for plaintiff moved the court to reopen the case to permit him to introduce these rules and regulations of the Industrial Commission, to which the defendant objected. The record simply shows this action: ''Court: Motion overruled.'' Which motion was the court overruling, that for a directed verdict, or that to reopen the case? Presumably the former, because counsel seem to have acted upon that theory. However, the record fails to disclose that thereafter plaintiff's counsel followed up the matter, and we cannot find that these rules and regulations ever were in fact offered in evidence. However, the trial court did charge the jury specifically and at length

with reference to these regulations, both of 1924 and of 1933. And counsel argued to the jury the liability arising therefrom.

This bulletin 110, issued by the Department of Industrial Relations and the Industrial Commission of Ohio, sets forth requirements issued in compliance, as is averred, with Section 871-22 *et seq.*, General Code. We have heretofore set forth the requirement with reference to freight elevators already installed prior to the adoption of the rules in 1924, and this clearly appears in the much discussed bulletin 110. On page 5 of the bulletin it is provided that after the effective date of the new code, which was January 1, 1933, all new construction and installation shall conform to its provisions. It is stated, however, that, "Equipment installed prior to that time shall conform to and comply with the specific requirements relating to elevators adopted by the Industrial Commission, effective January 1, 1924, which said requirements are continued in full force and effect as to these said installations * * *."

As we construe these rules, therefore, this elevator, having been installed prior to 1933, and also prior to 1924, was subject to the requirement of the earlier regulation, which, as we have indicated, was not met.

The regulations of 1933 governing new installation recognizes two systems:

"1. The Door Unit System, in which the interlock prevents the operation of the elevator machine in a direction to move the car away from the landing unless the hoistway door at that landing at which the car is stopping, or is at rest, is locked in the closed position.

"2. The Hoistway Unit System, in which the interlocks prevent the operation of the elevator machine in a direction to move the car away from the landing unless all hoistway doors are locked in the closed position."

As heretofore stated, the trial court charged, and counsel argued to the jury, the effect of the regulations of the two dates. Yet there is a very material difference between the 1924 rules, which were applicable, and the 1933 rules, which were clearly not applicable.

The door unit system authorized by the 1933 regulations is a system whereby each door or gate is equipped with an electric contact and mechanically locks, preventing the car from moving away from the floor unless all doors or gates are closed. This type requires an operator in the car.

The hoistway unit system is an electro-mechanical interlock which prevents the car from moving from the floor unless all doors are closed and locked, this type can be used on all elevators that have an operator or those operated automatically by push button.

Clearly, such requirements are altogether different and much more stringent than a requirement that the doors be equipped with self-closing locks which cannot be opened from the outside, except by means of a key. To have charged the jury, as the trial court did, upon these 1933 regulations, imposed a duty upon the defendant far greater than any with which it was chargeable. The jury, clearly, might have been misled as to what were the requirements imposed upon this defendant. So great was the variation between these 1933 rules and the obligation actually imposed upon the owner of the building that the jury easily might have come to the conclusion that this owner was guilty of the most gross negligence and of utter indifference to the duty imposed upon it. In view of such a charge it will not suffice to say that a verdict for the plaintiff below would have been justified in any event. We hold that the 1924 requirement was clearly applicable and properly directed toward the owner of this building in question. We hold that the 1933 rules and regulations were not applicable and that, in submitting them to the jury, the trial court committed prejudicial error.

This suit was brought by the plaintiff, as administratrix, for the benefit of the next of kin, who were the plaintiff, the mother, two adult sisters and an adult brother of the decedent. And, as indicated heretofore, upon the cause of action for wrongful death, the verdict was for $10,000. The record shows that counsel for appellee argued to the jury that these four persons were the beneficiaries of the decedent, and the court charged the jury to the same effect, and refused, upon request, to withdraw from their consideration any claim made on behalf of the adult brother and sisters.

The record is clear and unquestioned that the brother and one of the sisters were not in any sense dependent upon this decedent and received nothing from him, and the evidence as to the other sister being a beneficiary is exceedingly meager. It seems to us that, in this respect, also, the trial court committed prejudicial error.

Attention is directed to the case of *Martin, Admx.*, v. *Pennsylvania Rd. Co.*, 55 Ohio App., 205, 9 N. E. (2d), 302, in which case a majority of this court, as now constituted, participated, and the judgment in which case the Supreme Court refused to review. True, the syllabus in the *Martin case* might be construed as denying the right of recovery only in a case more glaring than the one at bar. But the opinion, and the numerous authorities cited in the course of the opinion, sustain our conclusion that the trial court in the instant case committed error.

Upon the two grounds indicated, the judgment of the Court of Common Pleas may be reversed and this cause remanded to that court for further proceedings.

*Judgment reversed and cause remanded.*

Ross and SHERICK, JJ., concur.

Ross, P. J., of the First Appellate District, SHERICK and MONTGOMERY, JJ., of the Fifth Appellate District, sitting by designation in the Seventh Appellate District.

(Decided February 15, 1940.)

ON MOTION to certify.

BY THE COURT. We are asked to certify this case to the Supreme Court because of alleged conflict with the conclusion of the Court of Appeals of the Eighth Appellate District in a case of *Kasunic, Admr.,* v. *Euclid East Seventeenth Street Co.,* reported in 32 O. L. R., 261. While there is some difference in the facts, our conclusions are not in accord. However, as we view it, there are two reasons why the motion should be, and is, denied:

First: We followed the decisions of the Supreme Court cited in the original opinion, and, even if another Court of Appeals does not see fit to follow such decisions, it would be vain to sustain a motion which would require the Supreme Court to restate the law.

Second: Under the concluding sentence of Section 1483, General Code, recognition and sanction are not to be accorded to unofficially reported opinions.