JUSTICE, APPELLANT, *v.* THE SHELBY ICE & FUEL CO., APPELLEE.

[Cite as Justice v. Shelby Ice & Fuel Co., 18 Ohio App. 2d 197.]

198

(No. 1049—Decided April 17, 1969.)

*Mr. Nelson Lancione*, for appellant.
*Mr. Robert T. Green*, for appellee.

Putman, J. This appeal is on questions of law from a judgment entered upon a jury verdict for the defendant in a personal injury case.

It arises out of injuries sustained by plaintiff, appellant herein, Paul Justice, while dismantling a tank on the premises of the defendant corporation. Plaintiff's employer had been engaged by the defendant corporation to dismantle the tank and had directed plaintiff to defendant's plant to do the job.

The tank fell while plaintiff was working on it, and plaintiff suffered injury.

The foregoing was not disputed.

The plaintiff claimed to be a frequenter under Section 4101.01 (E), Revised Code, entitled to the benefit of the protection of certain Ohio statutes setting forth the duty of employers to such persons and providing a criminal penalty for violation. (Sections 4101.11, 4101.01 (K), 4101.12, 4101.15 and 4101.99, Revised Code.)

The facts giving rise to the applicability of these statutes to this plaintiff's case were admitted in the answer and uncontroverted in the proof.

The answer contained the following paragraph:

"Further answering defendant alleges that plaintiff assumed the risk of injuries when he chose to dismantle the

free-standing tank without first securing it to adjoining structures by ropes or cables, and further alleges that any injury and damages suffered by the plaintiff were caused solely and proximately by the negligence of the plaintiff.''

The plaintiff assigns as prejudicial error the following:

1. The giving of a special instruction on assumption of risk.

2. The submission of three interrogatories in writing for the jury to answer.

3. The failure to charge on the so-called ''frequenter'' statutes.

All three assignments of error are well taken.

Each assignment of error will be discussed in turn.

I.

The doctrine of assumption of risk is not available as a defense in cases where the ''safe place'' statutes (Section 4101.01 *et seq.*, Revised Code) apply. *P., C., C. & St. L. Ry. Co.* v. *Kinney* (1916), 95 Ohio St. 64; *Hauer* v. *French Brothers-Bauer Co.* (1931), 43 Ohio App. 333, paragraph three of the syllabus; *Ziehr* v. *Maumee Paper Co.* (1905), 7 C. C. (N. S.) 144.

The 1964 edition of Professor William L. Prosser's handbook entitled ''Law of Torts'' states at page 468:

''* * * There have been certain statutes, however, which clearly are intended to protect the plaintiff against his own inability to protect himself, including his own lack of judgment or inability to resist various pressures. Such, for example, are the child labor acts, and various safety statutes for the benefit of employees as to which the courts have recognized the economic inequality in bargaining power which has induced the passage of the legislation. Since the fundamental purpose of such statutes would be defeated if the plaintiff were permitted to assume the risk, it is generally held that he cannot do so, either expressly or by implication. Quite recently Connecticut and California have taken the lead in holding the risk cannot be assumed as to the violation of any safety statute enacted for the protection of the public, on the somewhat ingenious ground that the obligation and the right so created are

public ones, which it is not within the power of any private individual to waive. This amounts to saying that the policy of the statute overrides private agreements and understandings. Such decisions are quite likely to appear in other states in the near future."

The future will tell with respect to Professor Prosser's ability as a prophet on this point, but historians in Ohio may validly dispute the claim that Connecticut and California have "taken the lead."

The law in Ohio since 1905 has recognized this doctrine.

In the case of *Ziehr* v. *Maumee Paper Co.* (1905), 7 C. C. (N. S.) 144, the Circuit Court quotes a previous federal appellate decision of a Judge Taft in 37 C. C. A. 499, speaking on the same point:

"The only ground for passing such a statute is found in the inequality of terms upon which the railroad company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to contract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that."

The Ohio Circuit Court for Lucas County goes on, in 1905, in the *Ziehr case*, to say, at page 160 in its opinion in 7 C. C. (N. S.):

"* * * As stated by Judge Taft in this opinion such legislation is enacted not only for the protection of employees, but also in the interest of the public or commonwealth who are interested in protecting men from personal injuries, and should be maintained rather than overthrown by the courts."

Professor Prosser says further at page 457 in his "Law of Torts":

"* * * Thus it is generally held that a contract exempt-

ing an employer from all liability for negligence toward his employees is void as against public policy. * * *''

Cited is the Supreme Court of Ohio in the 1916 case of *P., C., C. & St. L. Ry. Co.* v. *Kinney*, 95 Ohio St. 64, where the Supreme Court of Ohio struck down as void an express written contract whereby a railroad employee agreed to assume all risks of accident or casualty incident to such employment and service. The decision is grounded upon the public policy established by the ''safe place statutes,'' 95 Ohio St. 64, at page 70.

Thus, if an express written assumption-of-risk contract exempting a person under a duty to provide a safe place to work is void as against public policy in Ohio then, *a fortiori*, a doctrine of implied assumption of risk is outlawed by the statutes.

Squarely in point is the third paragraph of the syllabus in *Hauer* v. *French Brothers-Bauer Co.* (1931), 43 Ohio App. 333:

''3. Under statutes requiring employer to furnish employees safe place of employment and regarding prevention of injuries, doctrine of assumption of risk no longer obtains. * * *''

The opinion in the *Hauer case*, at page 335, refers expressly to frequenters:

''It is argued that the decedent assumed the risk by going into this place of danger. The doctrine of assumption of risk, as we understand it, has always been held to apply in a suit between an employer and an employee, and would have no application to an employee of an independent contractor. On this proposition we cite 39 Corpus Juris, 708, and cases there cited; also, 18 Ruling Case Law, 696, Section 180, and cases cited. However that may be, we are of opinion that the doctrine of assumption of risk no longer obtains in view of the statutes above referred to, which are designed for the protection and good of the whole community. If this proposition were to obtain, it would nullify the object of the statutes, which is to protect frequenters, as well as employees of the owners or operators, against unprotected machinery.''

Apart from the applicability of the ''safe place''

statutes to the hazard which operated to injure this plaintiff, and viewing, *arguendo*, the plaintiff's right to recover as dependent upon a common-law duty of ordinary care, the record in this case makes it erroneous to charge on assumption of risk.

The plaintiff claimed defendant was negligent in failing to secure at the base a heavy vat upon which he was working pursuant to a contract between the defendant company and the plaintiff's employer, and also in the particular that the defendant's president, one Mr. Koch, had affirmatively instructed him it was bolted fast.

Two witnesses testified as to such statement.

The defendant put Mr. Koch on the stand. He did not deny making the statement but was limited in his examination by defendant's lawyer to testifying as follows:

"Q. Now Mr. Justice used some words about the tank being fastened down and said he asked you that question. Do you recollect that? A. I don't recall him ever asking whether it was fastened down.

"Q. After first being present and seeing Justice, did you later go back in the plant where he was? A. Yes, more than once.

"Q. Have further conversation with him that morning? A. Probably.

"Q. What was it? A. I don't remember."

The testimony of the plaintiff on this point was, "I asked him how old a tank and he told me it was bolted fast, something holding it, I don't know exactly what it was."

With this testimony uncontroverted that the defendant's agent had in substance affirmatively led him to believe the tank was fastened, it was error prejudicial to the substantial rights of plaintiff for the trial court to submit to the jury the question whether plaintiff had assumed the risk of the tank being unfastened.

Not only was it prejudicial error to charge on assumption of risk correctly (which the court did in its general charge), but the court gave the jury a special instruction in writing before argument, which was an incorrect and misleading statement of the law on assumption of risk.

The instruction read:

"You are instructed that if the plaintiff was in as good a position as the defendant for ascertaining and understanding any possible dangers or hazards, and equally well knew and appreciated any possible dangerous conditions, the plaintiff cannot be allowed to complain for any injuries he received, but must be held to have assumed the risk. In other words, if you find that any danger in the work the plaintiff had to do or any dangerous conditions in the place the work was performed were as apparent to the plaintiff as to the defendant, the plaintiff assumed the risk of injury and the defendant is not liable. If the plaintiff knew or ought to have known of any danger, or if he had equal means with the defendant of knowing, the plaintiff cannot recover."

The substance of the instruction was that even if plaintiff was unaware of the risk, nevertheless he assumed it if he had an equal opportunity with the plaintiff to discover it.

This is not the doctrine of assumption of risk. Assumption of risk includes a subjective requirement of actual awareness of danger, or danger so readily apparent to the plaintiff himself (not the defendant) that the plaintiff will not be believed if he claims he did not in fact know of it, and in addition a full appreciation of the hazard operating to injure and thereafter a voluntary decision of the will to proceed in the face of the known hazard. *Ricks* v. *Jackson* (1959), 169 Ohio St. 254.

## II.

Phrases, the substance of which are not made allegations of the pleadings, may not be the text of interrogatories to the jury under Section 2315.16, Revised Code. *Miller* v. *McAllister* (1959), 169 Ohio St. 487, paragraph two of the syllabus.

At the defendant's request, the court read special interrogatories to the jury and sent them to the jury room to be answered as follows:

"Three interrogatories are being submitted to you and when 9 or more of your number agree on the answers of such you will sign same. No. 1 is, 'Was the tipping of the tank caused solely by the action of the plaintiff in

exerting force on it with a wrecking bar?' No. 2 is, 'Did the plaintiff consider securing the tank with a cable before he started his work?' and No. 3 is, 'If your answer to special interrogatory No. 2 is "yes" did the plaintiff, before starting work, appreciate the possibility that the tank might fall if not secured?' "

Neither the affirmative nor the negative of the matters inquired about was alleged in the pleadings. The plaintiff did not plead them to be true or false, nor did the defendant. We hold the statute to require it.

Section 2315.16, Revised Code, as amended effective in 1955, provides for the court under certain conditions to instruct the jury "specially to find upon particular material allegations contained in the pleadings controverted by an adverse party * * *."

That statute was amended in 1955 to include as new matter the requirement that the interrogatories be limited to particular material allegations contained in the pleadings controverted by an adverse party.

This means that if the practitioner wishes the court to inquire of the jury in writing upon a particular proposition he must take care to see that either the affirmative or negative of that particular proposition of fact is alleged in and controverted by the pleadings.

Such was not always the rule. Former Section 2315.16, Revised Code, read as follows:

"When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk."

The purpose of the amendment was to change the rule by adding the requirement that the text of the matter inquired of be expressly pleaded.

Since the amendment, a practitioner may consult the pleadings before trial with confidence that his eyes will not see interrogatories go to the jury except in express language which his eyes perceive to be set forth in the plead-

ings, and then only if the proposition has been controverted.

Bringing the rule down in its application to this case, the answer of the defendant alleged that the plaintiff "chose to dismantle the free standing tank without first securing it to adjoining ropes and cables."

This would have authorized an inquiry: "did the plaintiff choose to dismantle the free standing tank without first securing it to adjoining ropes and cables?" if the plaintiff had not admitted in the trial that he had.

### III.

In a personal injury case where liability is an issue, the trial court must, without special request, correctly tell the jury what duty defendant owed plaintiff.

The plaintiff claimed to be a "frequenter" entitled to the protection of the safe place statutes under Sections 4101.01 (E), 4101.01 (K), 4101.11 and 4101.12, Revised Code.

The trial court in its general charge gave the common-law charge on the duty of landowners toward business invitees in this language:

"The owner or occupant of the premises owes a duty to an invitee or business visitor to exercise ordinary care for the invitees or visitors' safety, to maintain the premises in a reasonably safe condition and to use ordinary care to provide notice of any concealed dangers of which the owner or occupant of the premises has knowledge or which in the exercise of ordinary care he should have discovered."

The statutory duty (Sections 4101.11 and 4101.01 (K), Revised Code) to "furnish a place of employment which shall be as free from danger to the life, health, safety or welfare of employees therein and frequenters thereof as the nature of the employment will reasonably permit, and to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters" was not contained in the instructions.

The Ohio Statutes, Sections 4101.01 (E), 4101.11, 4101.01 (K) and 4101.12, Revised Code, provide as follows:

Section 4101.01 (E):

" 'Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

Section 4101.11:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

Section 4101.12:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

Section 4101.01 (K) reads as follows:

" 'Safe' or 'safety,' as applied to any employment or a place of employment, means such freedom from danger to the life, health, safety, or welfare of employees or frequenters as the nature of the employment will reasonably permit, including requirements as to the hours of labor with relation to the health and welfare of employees."

The court failed to tell the jury about these duties owed plaintiff by defendant.

The plaintiff had a right to have his claim of Mr. Koch's assurances respecting the vat being bolted at the bottom considered in the light of defendant's duty "to do

every other thing reasonably necessary" to protect his "safety," as that term is defined in Section 4101.01 (K), Revised Code. See *Bosjnak* v. *Superior Sheet Steel Co.* (1945), 145 Ohio St. 538. He was denied this and it prejudiced his substantial rights.

All three assignments of error are well taken and are sustained. They each represent error prejudicial to the substantial rights of the plaintiff for which the judgment will be reversed and the cause remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

VAN NOSTRAN, J., concurs.
RUTHERFORD, J., concurs in the judgment.

RUTHERFORD, J., concurring in the judgment. As stated by Judge Hart in his opinion in *Schwarz* v. *General Electric Realty Corp.*, 163 Ohio St. 354, at page 357:

"Due to the infinite variety of circumstances under which an employee of an independent contractor may be injured while working for the contractor on the premises of the owner thereof employing the contractor, the law as to the liability of the owner for such injuries is in some confusion. * * *"

Key cases relative to the applicable law are: *Comerford* v. *Jones & Laughlen Steel Corp.*, 170 Ohio St. 117; *Schwarz* v. *General Electric Realty Corp.*, 163 Ohio St. 354; *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St. 103; and *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St. 538.

From these cases, I reach the following conclusions:

1. That the obligation of the owner to comply with Section 4101.01 *et seq.*, Revised Code, often called the frequenter statutes, is dependent upon whether the employee of the independent contractor is a "frequenter" within the meaning of those sections, and this question of whether the employee of an independent contractor stands in the position of a frequenter as to the owner of the premises, within the meaning of the statutes, must be decided by determining whether such employee of an independent contractor was a frequenter of a place of em-

ployment of which the owner had either custody or control or the right thereto.

In the instant case, there is testimony from which the jury could have found that, through Tom Koch, its president and manager, The Shelby Ice and Fuel Company did exercise control, by active participation, by advising plaintiff (the employee of the independent contractor) that the tank was fastened and by requesting that it be dismantled from the top rather than from the bottom. Such testimony if found by the jury to be true was sufficient to make applicable the provisions of Sections 4101.01, 4101.11 and 4101.12, Revised Code, and the court's refusal to properly charge the jury, as to the applicability of such sections, when requested to do so, if they find that the defendant did exercise control or retain the right thereto, was error prejudicial to the plaintiff, appellant herein.

2. Where an employee of an independent contractor, while engaged in work upon premises, the possession and control of which are retained by the owner, is a frequenter within the meaning of Section 4101.01 *et seq.*, Revised Code, the owner owes to him the duty to do everything reasonably necessary to furnish a place of employment which is as safe as the nature of the employment will reasonably permit, including the duty to inform such frequenter of hazardous conditions of the premises created by the owner or of which he has knowledge but which are unknown by and not obvious to the frequenter. Such duty of the owner to do everything reasonably necessary to furnish a place of employment which is as safe as the nature of the employment will reasonably permit does not extend, however, to inherent hazards necessarily present because of the character of the work to be done or to a hazard created by negligent operation by the independent contractor or his employee.

3. The employee of an independent contractor does not assume the risk resulting from any breach of duty by the owner who employed the contractor; however, his right of recovery may be barred by his own negligence, if his negligence contributed as a proximate cause of his in-

juries. See *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St. 538, at page 547, where the court said:

"In our opinion it was the duty of the trial court to submit the questions of negligence and contributory negligence to the jury with proper instructions, * * *."

In the instant case, the court charged on assumption of risk but not on contributory negligence. The tank which the defendant contracted with plaintiff's employer to have dismantled was three to three and a half feet in diameter and approximately twenty feet high and stood on a metal frame with water underneath. It was used for the manufacture of ice but had not been in use for several years and was rusted. It was in a building used only occasionally for storage. There was testimony that plaintiff by prying on a bar caused the metal frame under the tank to bend. If the tank fell because of plaintiff's prying on it with a bar as a part of the process of dismantling the tank, whether prying with the bar caused it to fall by causing the metal frame supporting it to bend or whether the force caused it to fall because it was not fastened to the frame presented jury questions of fact relative to the proximate cause of injury. If under the circumstances as found by the jury the proximate cause of injury to plaintiff was a breach of duty by defendant, defendant would be liable, but if the proximate cause was other than a breach of duty by defendant or the jury found negligence on the part of plaintiff which contributed as a proximate cause of his injuries, the defendant would not be liable.

The provisions of Section 2315.16, Revised Code, limit the scope of interrogatories to having the jury "specially to find upon particular material allegations contained in the pleadings controverted by an adverse party."

In *Miller* v. *McAllister*, 169 Ohio St. 487, in the second paragraph of the syllabus, the Supreme Court of Ohio in defining the legislative intent of the purpose of interrogatories said, "and such interrogatories are to test the correctness of the verdict returned and contemplate essentially findings on controlling questions of fact."

Thus in the instant case, an example of interrogatories which among others would be proper are:

Do you find by a preponderance of the evidence that the defendant by its president or manager did advise the plaintiff that the tank was fastened at the bottom?

Do you find by a preponderance of the evidence that the defendant by its president or manager did request the plaintiff to dismantle the tank from the top rather than from the bottom?

Do you find by a preponderance of the evidence that the tank was not fastened at the bottom?

The first interrogatory asked was, "Was the tipping of the tank caused solely by the action of the plaintiff in exerting force on it with a wrecking bar?" The jury answered, "Yes."

There was no mention of prying with a wrecking bar in the pleadings, although defendant did allege that any injury or damages suffered by the plaintiff was caused solely and proximately by the negligence of the plaintiff, which the plaintiff by reply denied. If the pleadings were not sufficiently specific when filed, it might be necessary before presenting the interrogatory in question to have the pleading amended to conform to the evidence, although such would seem superfluous if the controlling question of fact relates directly to a particular material general allegation in the pleading controverted by the adverse party. However, a further difficulty with the question asked is that, under the evidence in this case, it is not determinative of any question of fact which is controlling because it does not relate to the conditions under which the prying may have caused the tank to fall for some of which conditions defendant would be liable, but for others as to which defendant would not be liable. Even had it been otherwise proper, this interrogatory was therefore confusing and misleading and giving it to jury was error prejudicial to the plaintiff.

For the reasons stated, I concur in the judgment of reversal and remand for a new trial.