354 S.E.2d 581

**Zolene PACK, Plaintiff Below,**

v.

**Doyle VAN METER and C. Gregory Van Meter, Defendants Below,**

v.

**NELSON'S DRESS SHOP, INC., a West Virginia corporation, Third-Party Defendant Below.**

No. 16561.

Supreme Court of Appeals of West Virginia.

Oct. 29, 1986.

Stephen P. Meyer, Meyer & Perfater, Charleston, Michael T. Clifford, Charleston, for plaintiff.

John C. Lobert, Charleston, W. Graham Smith, Smith & Rumora, Williamson, for defendants.

.MILLER, Chief Justice:

This case involves the right of an employee to sue the owners of her place of employment for personal injuries suffered on the leased premises.

On April 29, 1980, Zolene Pack, the plaintiff and an employee of Nelson's Dress Shop, fell down an interior stairway in the store during the course of her employment. There was no handrail on the stairway, which connected the first and second floors of the store. The stairway steps were made of hard tile with the edges capped with metal strips. In the fall, the plaintiff sustained rather severe injuries to her left knee and back. The building in which Nelson's Dress Shop is located was rented from R. Doyle and C. Gregory Van Meter. On January 20, 1982, the plaintiff filed a personal injury action against the Van Meters as a result of her accident.

The Van Meters filed a third-party action against their tenant, Nelson's Dress Shop, claiming that under their written lease, the tenant had agreed to indemnify and hold them harmless for injuries occurring on the leased premises.[1] A jury in the Circuit Court of Mingo County awarded the plaintiff $450,000 in damages. Since the jury found the plaintiff to have been ten percent negligent, the award was reduced by $45,-000. The trial court further reduced the award by $103,000 to offset the amount of money the plaintiff had received in workers' compensation benefits, leaving a total award of $302,000.

When this case was originally appealed, we discovered that the trial court had not ruled on all of the grounds asserted in the motion for a new trial and we remanded the matter back for further rulings. After examining all of the Van Meters' assign-ments of error, the trial court ruled that five of the grounds asserted had merit. Consequently, the verdict was set aside and a new trial was awarded. The plaintiff appeals the trial court's decision in setting aside the verdict. The Van Meters ask this Court to affirm the trial court's final decision and further cross assign additional errors supporting the decision to set aside the verdict. After examining all of the issues presented, we conclude the trial court was correct in setting aside the verdict.

I.

## WORKERS' COMPENSATION OFFSET

■ One of the pivotal issues in this case involves the trial court's decision allowing the amount of workers' compensation benefits received by the plaintiff to be brought to the jury's attention and subtracted from its award of damages. After her injury, the plaintiff filed a workers' compensation claim against her employer, Nelson's Dress Shop, since the injury was work related. Her claim was approved and she was granted a permanent total disability award. At the time of the trial, she had received approximately $103,000 in workers' compensation benefits.

The trial court permitted this figure to be disclosed to the jury. Also, the plaintiff's counsel was allowed to argue to the jury that if it did not return a verdict in excess of $103,000 for the plaintiff, she would, in effect, receive nothing. This argument was predicated on the fact that the trial court had ruled the workers' compensation benefits would be subtracted from the jury's award of damages. The plaintiff argues that the trial court should not have offset the workers' compensation benefits against the jury's award of damages. The trial court concluded after the trial that the procedures it had followed in handling the

---

1. Nelson's Dress Shop participated in the trial and along with the Van Meters presented arguments and instructions to the jury based upon various provisions of their lease. Each claimed that the other was liable for any damages suffered by the plaintiff by virtue of the lease. However, it does not appear from the record that the issue of liability between the Van Meters and Nelson's Dress Shop was resolved by either the jury or the trial court. Therefore, we do not consider the issue of liability as between the landlord and tenant based upon the lease provisions.

offset issue were improper and, therefore, set aside the verdict on that ground.

The trial court was incorrect in initially assuming that the workers' compensation offset was proper in this case. This suit was brought against the Van Meters as the landlords of the plaintiff's place of employment. Our law is quite clear that the amount of money that an injured plaintiff receives from a collateral source is not admissible. In *Jones v. Appalachian Electric Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960), the defendant sought to have its adverse verdict reduced in a wrongful death action by the amount of benefits the widow had received from workers' compensation for her husband's death. We held in Syllabus Point 3 that this could not be done:

> "The amount of compensation received for injury or death from the Workmen's Compensation Fund is not a proper subject for a remittitur in an action by the injured person, or the administrator of his estate in case of death, against a third party responsible for his injury or death."

*See also National Fruit Product Co. v. Baltimore & Ohio R.R. Co.*, 174 W.Va. 759, 762, 329 S.E.2d 125, 127-31 (1985); Syllabus Point 3, *Jones v. Laird Foundation, Inc.*, 156 W.Va. 479, 195 S.E.2d 821 (1973); Syllabus Point 3, *Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952 (1916).[2]

■ Although the amount of workers' compensation benefits should not have been injected into this case nor offset from the jury's verdict, this error cannot be

cured by simply adding $103,000 to the final verdict. The amount of workers' compensation benefits was presented to the jury, which was told that any award of damages would have to exceed $103,000 before the plaintiff would receive any compensation. This argument brought a substantial base figure before the jury that had no direct correlation to the actual damages that could have been awarded for the plaintiff's personal injuries. The jury may have concluded that the workers' compensation benefits represented actual losses the plaintiff had incurred which could have caused them to overvalue the plaintiff's claim.[3] For the foregoing reasons, we conclude the trial court erred in reducing the verdict by the amount of workers' compensation benefits received by the plaintiff.

## II.

### LIABILITY UNDER SAFETY STATUTES

The trial court accepted the plaintiff's theory that the Van Meters could be found liable for maintaining the interior stairway of the store in an unsafe manner under W.Va.Code, 21-3-6. W.Va.Code, 21-3-6, provides in pertinent part: "In all factories, mercantile establishments, mills or workshops, proper and substantial handrails shall be provided on all stairways, and the treads thereon shall be so constructed as to furnish a firm and safe foothold."

It is clear that W.Va.Code, 21-3-6, mandates that stairways in mercantile establishments must have handrails and the

---

**2.** The trial court apparently thought that the plaintiff's action against the Van Meters was somehow a disguised suit against her employer, Nelson's Dress Shop. This conclusion was premised on the fact that the Van Meters in their lease agreement had an indemnity clause requiring Nelson's Dress Shop to indemnify them for injuries occurring on the leased premises. *See Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 451 n. 4, 288 S.E.2d 511, 518 n. 4 (1982); *cf.* Annot., 4 A.L.R.4th 798 (1981). The principles of *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907, 96 A.L.R.3d 1035 (1978), are not applicable simply because the plaintiff did not sue her employer. Even if we assume the indemnity provision is applicable, the Van Meters' recovery in the

third-party action against Nelson's Dress Shop would be for the amount they were required to pay the plaintiff. Nelson's Dress Shop would not be entitled to an offset for the workers' compensation benefits made on behalf of the plaintiff. *See National Fruit Product Co. v. Baltimore & Ohio R.R. Co.*, 174 W.Va. 759, 329 S.E.2d 125 (1985).

**3.** The record contains no breakdown of the workers' compensation benefits. However, they would include not only medical and hospital expenses under W.Va.Code, 23-4-3, but also weekly temporary total disability benefits and permanent total disability benefits under W.Va. Code, 23-4-6, which are based on "average weekly earnings" as defined therein.

treads on the steps must furnish a firm and safe foothold. This statute does not state explicitly who is responsible for seeing that these requirements are met. The Van Meters argue that W.Va.Code, 21–3–6, only applies to employers and their employees and cite several of our past decisions interpreting related statutes.

In order to fully understand W.Va.Code, 21–3–6, it must be read in conjunction with other related statutes, particularly W.Va. Code, 21–3–1. In Syllabus Point 3 of *ACF Industries, Inc. v. Credithrift of America, Inc.*, 173 W.Va. 83, 312 S.E.2d 746 (1983), we quoted one of the cardinal rules of statutory construction:

> " ' "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner*, [159] W.Va. [108], 219 S.E.2d 361 (1975).' Syllabus Point 1, *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981)."

W.Va.Code, 21–3–1, is the introductory section in the part of our Code relating mainly to the safety and welfare of employees in the workplace and contains this provision with regard to the owner of certain premises: "Every employer and *every owner of a place of employment*, place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it reasonably safe." (Emphasis added). This language clearly imposes a duty on both the employer and the owner of a place of employment, place of public assembly, or a public building to maintain such places in a reasonably safe condition.

We do not have any prior cases interpreting either W.Va.Code, 21–3–1, or W.Va.

Code, 21–3–6, in a factual situation similar to the one presented by this case. Our earlier cases interpreting W.Va.Code, 21–3–1, and related statutes applied its protective features to employees and viewed the employer as being responsible. *E.g., Tarr v. Keller Lumber & Construction Co.*, 106 W.Va. 99, 144 S.E. 881 (1928); *McClary v. Knight*, 73 W.Va. 385, 80 S.E. 866 (1913).[4] In *Lindsey v. Bluefield Produce & Provision Co.*, 91 W.Va. 118, 112 S.E. 310 (1922), we held that a forerunner to this statute was not applicable to a person who was not an employee of the defendant.[5]

In *Chenoweth v. Settle Engineers, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), *overruled on other grounds, Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976), several wrongful death actions were filed against the city of Elkins after employees of an independent contractor, hired to excavate a sewer line for the city, were killed when the ditch in which they were working collapsed. After citing W.Va.Code, 21–3–1, we summarily concluded the city had no duty owed to the independent contractor's employees under the statute. In a decision based largely on *Chenoweth*, the Fourth Circuit Court of Appeals in *Hamrick v. Aerojet-General Corp.*, 528 F.2d 65 (4th Cir.1975), held that an employee of a subcontractor had no cause of action under W.Va.Code, 21–3–1 through –3, against a general contractor for injuries sustained on a "man-lift" installed by the general contractor at the construction site.

We do not consider *Chenoweth* to be either controlling or persuasive in this case because the Court did not fully consider the applicability of W.Va.Code, 21–3–1. Specifically, it did not consider that in

---

4. With the advent of the Workers' Compensation Act in 1913, suits between employees and employers were barred in most instances. W.Va.Code, 23–2–6, and W.Va.Code, 23–4–2. Consequently, there has been little litigation under our safety statutes since that time. W.Va. Code, 21–3–1 through –18.

5. Syllabus Point 6 of *Lindsey* states:

"Sec. 60, c. 15–H Barnes' Code 1918, which requires that the openings of elevators on each floor of mercantile, and other buildings therein named, shall be protected by good and sufficient self-closing hatches, or strong guard rails at least three feet high, and due vigilance used to keep same closed at all times, except when in actual use, is designed for the protection of employees therein, and not for customers or licensees, or trespassers."

1937,[6] W.Va.Code, 21–3–1, was significantly changed by the insertion of the language, which we have earlier quoted, that requires "every owner of a place of employment, place of public assembly, or a public building" to "construct, repair and maintain the same as to render it reasonably safe." Thus, under W.Va.Code, 21–3–1, the employer and the owner of a place of employment, place of public assembly, or a public building is affixed with a statutory responsibility to maintain such place in a reasonably safe condition.[7]

■ The specific question raised in this case, however, is whether the owner of a place of employment leased to an employer is liable to his tenant's employee for violating that portion of W.Va.Code, 21–3–6, which requires handrails on stairways and safe treads on steps. We recognize that some of the provisions in W.Va.Code, 21–3–1 through –18, involve safety requirements that are clearly the responsibility of an employer because they involve machines or other instrumentalities directly related to the employment activity over which the owner of the place of employment exercises no control.

However, we believe that in the present case, the failure to maintain the stairway with handrails and the steps with a safe tread is a responsibility reasonably shared by the employer and the owner of the place of employment. The Van Meters could have corrected these structural problems prior to renting the store to Nelson's Dress Shop. To hold otherwise would render the language added to W.Va.Code, 21–3–1, by the 1937 amendment meaningless and would absolve owners of places of employ-

ment from any responsibility under this statute.

Courts in other jurisdictions have held that a tenant's employee, who is injured at his place of employment as a result of the landlord's violation of a safety statute or other applicable law, can maintain an action against the landlord to recover damages. See, e.g., Finnegan v. Royal Realty Co., 35 Cal.2d 409, 218 P.2d 17 (1950) (en banc); Hornsby v. Ray, 327 So.2d 146 (La.Ct.App. 1976); Repucci v. Exchange Realty Co., 321 Mass. 571, 74 N.E.2d 14 (1947); Vergano v. City of New York, 286 A.D. 1113, 146 N.Y.S.2d 255 (1955); Bevan v. Century Realty Co., 64 Ohio App. 58, 27 N.E.2d 777 (1940); Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952).

We have frequently acknowledged that a statute may create a cause of action in favor of the class of persons it is designed to protect. E.g., Jenkins v. J.C. Penney Casualty Ins. Co., 167 W.Va. 597, 280 S.E.2d 252 (1981); Hurley v. Allied Chemical Corp., 164 W.Va. 268, 262 S.E.2d 757 (1980).[8]

Furthermore, even in the landlord-tenant law, we have recognized that a landlord is not insulated from all liability with regard to injuries suffered by a third party on the leased premises. In Cowan v. One Hour Valet, Inc., 151 W.Va. 941, 157 S.E.2d 843, 28 A.L.R.3d 1333 (1967), we held that an electric company meter inspector who was injured when he fell through the floor adjacent to the meter of a laundry he was checking could recover damages from the laundry's landlord. We stated in Syllabus Points 6 and 7 of Cowan:

"6. There are exceptions to the general rule that a landlord or lessor is not

6. See 1937 W.Va.Acts ch. 89.

7. A number of courts have concluded that at common law there exists a "public use" exception in the landlord-tenant law which imposes liability on a landlord for the unsafe condition of leased premises which are open to members of the public. See Prosser & Keeton on Torts § 63 at 437–40 (5th ed. 1984); Annot., 17 A.L.R.3d 873 (1968). This exception is not argued here and, therefore, we do not address it.

8. We have a number of negligence cases where we have held that a violation of a statute or

ordinance is prima facie evidence of negligence. See Costello v. City of Wheeling, 145 W.Va. 455, 461, 117 S.E.2d 513, 517 (1960); Barniak v. Grossman, 141 W.Va. 760, 765, 93 S.E.2d 49, 53 (1956). As for the violation of safety statutes, in Tarr v. Keller Lumber & Construction Co., 106 W.Va. 99, 144 S.E. 881 (1928), we held that an employer's failure to provide safety devices on a power saw, in violation of the predecessor to W.Va.Code, 21–3–2, constituted prima facie evidence of negligence. The employer was not a subscriber to the workers' compensation fund.

liable to the lessee or his invitees for injuries received on leased premises, one of which is the 'common use' situation where the tenants or invitees of tenants are injured on part of the premises which can be used in common by tenants or by the public, and where the landlord retains control of certain places or things in connection with the leased premises.

"7. A landlord or lessor may be held liable to third parties where he has knowledge or should have known of a defective condition at the expiration of a lease and does not disclose or repair such condition before he renews the lease or rents the premises to a new tenant." [9]

In a related area involving the duty of an owner or occupier of premises with regard to employees of an independent contractor who are working on the premises, we have stated in Syllabus Point 2 of *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976): "The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons." *See also Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974).

Consequently, we conclude the trial court did not err in holding that the Van Meters, as the owners of a place of employment, could be found liable under W.Va.Code, 21–3–1 and –6, for failing to provide a handrail on the interior stairway of the store and for failing to have a safe tread on the steps of the stairway.

## III.

## ASSUMPTION OF RISK

After we remanded this case the first time, the trial court held that it had erred in not permitting the Van Meters to amend their answer and assert the defense of assumption of risk. The Van Meters raised the issue of assumption of risk at the close of the plaintiff's case and moved to amend their answer to include this defense.[10] The Van Meters argue that the evidence clearly revealed that even though the plaintiff knew the stairway lacked a handrail, she continued to use it on a daily basis. At trial, the Van Meters claimed they did not raise this defense earlier because they were under the impression that the plaintiff had fallen on an exterior stairway adjacent to the store.

The plaintiff argues that where an employee safety statute has been violated, the assumption of risk defense cannot be applied to prevent the injured employee from recovering damages.[11] As a general rule, many courts have stated, without much discussion, that the assumption of risk defense may not be asserted in a tort case where the defendant's liability is premised upon the violation of an employee safety statute. *See, e.g., Fonseca v. Orange County*, 28 Cal.App.3d 361, 104 Cal.Rptr. 566 (1972); *Maia v. Security Lumber & Concrete Co.*, 160 Cal.App.2d 16, 324 P.2d 657 (Cal.App.1958); *Martin v. George Hyman Construction Co.*, 395 A.2d 63 (D.C.1978); *Lindsey v. Dean Evans Co.*, 11 Ill.App.3d 432, 297 N.E.2d 8 (1973); *Panta-*

9. Although not argued by the plaintiff, it appears that two plaintiff's instructions were offered based on Syllabus Point 7 of *Cowan* and were rejected by the trial court, even though the lease with Nelson's Dress Shop had been rewritten and signed about one month before the accident.

10. In Syllabus Point 5 of *Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960), this statement of the doctrine of assumption of risk is made: "Contributory negligence and assumption of risk are not identical. The essence of contributory negligence is carelessness; of assumption of risk, venturousness. Knowledge and appreciation of the danger are necessary elements of assumption of risk. Failure to use

due care under the circumstances constitutes the element of contributory negligence."
*See also Cross v. Noland*, 156 W.Va. 1, 190 S.E.2d 18 (1972); *Wright v. Valan*, 130 W.Va. 466, 43 S.E.2d 364 (1947); *Hunn v. Windsor Hotel Co.*, 119 W.Va. 215, 193 S.E. 57 (1937).

11. The parties do not raise and, therefore, we do not address the question of whether in view of our comparative negligence law established in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), there is a need to retain the doctrine of assumption of risk. There is a split of authority on this issue elsewhere. Annot., 16 A.L.R.4th 700 (1982).

*leo v. Gamm,* 106 Ill.App.2d 116, 245 N.E.2d 618 (1969); *Palier v. Dreis & Krump Manufacturing Co.,* 81 Ill.App.2d 1, 225 N.E.2d 67 (1967); *Reynolds v. Burlington Northern, Inc.,* 621 P.2d 1028 (Mont.1980); *Heath v. Soloff Construction, Inc.,* 107 A.D.2d 507, 487 N.Y.S.2d 617 (1985); *Baker v. Ohio Ferro-Alloys Corp.,* 23 Ohio App.2d 25, 261 N.E.2d 157 (1970); *Justice v. Shelby Ice & Fuel Co.,* 18 Ohio App.2d 197, 248 N.E.2d 195 (1969); *see also* Prosser & Keeton on Torts § 68 at 492–93 (5th ed. 1984); 1 Comparative Negligence § 5.00[2][f] (1986); 57 Am.Jur.2d *Negligence* § 286 (1971); 65A C.J.S. *Negligence* § 174(7) (1966).

The most commonly given explanation for this rule can be found in Prosser & Keeton, *supra* at 493:

> "There have been certain statutes, however, which clearly are intended to protect the plaintiff against his own inability to protect himself, including his own lack of judgment or inability to resist various pressures. Such, for example, are the child labor acts, and various safety statutes for the benefit of employees, as to which the courts have recognized the economic inequality in bargaining power which induced the passage of the legislation. Since the fundamental purpose of such statutes would be defeated if the plaintiff were permitted to assume the risk, it is generally held that he cannot do so, either expressly or by implication." (Footnotes omitted).

We followed this rule in *McClary v. Knight,* 73 W.Va. 385, 80 S.E. 866 (1913), where without any extended discussion we concluded the violation of a safety statute relating to guards on machinery precluded the employer from raising the defense of assumption of risk, stating in Syllabus

Point 7: "In an action for an injury caused by the failure of an employer to guard a dangerous machine, the defense of assumption of risk on the part of the servant cannot be made." [12]

▬ However, we do not believe that the abolishment of the defense of assumption of risk in this area of the law should be made absolute. There may be certain occasions when the risk assumed could be easily avoided by alternative conduct on the part of the employee. The court in *Martin v. George Hyman Construction Co.,* 395 A.2d at 74, which contains a well reasoned discussion of the use of the defense of assumption of risk where a safety rule has been violated, formulated this rule, which we adopt:

> "We hold, therefore, that the defense of assumption of risk is available to bar a claim based upon a breach of a duty imposed by the statutory safety scheme only where the defendant bears the burden of proving (1) that there was available to the wage earner an alternative to encountering the risk; (2) that the wage earner's choice between the risk and such alternative was fully voluntary; (3) that such alternative afforded the wage earner the safety mandated by statute, rule, or regulation; and (4) that the wage earner's determination to encounter the risk was, under the circumstances, made with willful, wanton, or reckless disregard for his own safety."

▬ We have no difficulty in concluding under this test that the Van Meters had no right to assert the assumption of risk defense in this case. The evidence demonstrates that this stairway was used on a daily basis by customers and employees to gain access to the second floor where additional merchandise was displayed. There is

---

**12.** Prior to the adoption of comparative negligence in *Bradley v. Appalachian Power Co., supra,* we recognized that employment in violation of the child labor law precluded an employer from raising the defense of contributory negligence. In Syllabus Point 4 of *Pitzer v. M.D. Tomkies & Sons,* 136 W.Va. 268, 67 S.E.2d 437 (1951), we stated:

> "Contributory negligence of a child between the ages of seven and fourteen years who has been illegally employed and injured as a re-

sult of such employment is not available as a defense in an action based on such illegal employment. Pt. 5, Syl., *Norman v. Coal Co.,* 68 W.Va. 405 [69 S.E. 857 (1910) ]; Syl., *Honaker v. Coal Co.,* 71 W.Va. 177 [76 S.E. 180 (1912) ]; and Pt. 5, Syl., *Griffith v. Coal Co.,* 75 W.Va. 686, [84 S.E. 621 (1915) ], in so far as inconsistent with this syllabus, are overruled."

*See also* 57 Am.Jur.2d *Negligence* § 310 (1971).

no indication that the plaintiff had any alternative she could reasonably use to gain access to the merchandise kept on the second floor other than by the interior stairway. Therefore, we conclude the Van Meters should not have been allowed to assert the assumption of risk defense. Consequently, we need not decide if the trial court acted properly from a procedural standpoint in finding it had erred by not allowing the Van Meters to amend their answer to include the assumption of risk defense.

## IV.

### ADDITIONAL ASSIGNMENTS OF ERROR

■ The remaining assignments of error require little discussion. The trial court held that the plaintiff's counsel in his closing argument had suggested that insurance coverage was available to pay for the damages when he remarked: "We think she [the plaintiff] put her hands in good hands." The Van Meters argued in their motion for a new trial that this comment was an allusion to a well known advertising slogan for Allstate Insurance Company: "You're in good hands with Allstate." The trial court accepted this interpretation and set aside the verdict on this ground.

Initially, we observe that no objection was made to this statement. Ordinarily, nonjurisdictional issues not objected to at trial are deemed waived. *See, e.g., Johnson v. State Dept. of Motor Vehicles*, 173 W.Va. 565, 318 S.E.2d 616 (1984) (per curiam); *Smith v. Holloway Construction Co.*, 169 W.Va. 722, 289 S.E.2d 230 (1982) (per curiam); *Loar v. Massey*, 164 W.Va. 155, 261 S.E.2d 83 (1979). However, because this issue may arise again in the new trial, we will discuss the point.

Taken in its context,[13] we believe the statement referred to the fact that the plaintiff was willing to place her case in the hands of the jury. The statement did not refer to insurance, did not refer to the defendants, and did not insinuate that the defendants were in "good hands." The trial court's interpretation that the statement referred to Allstate Insurance is too attenuated when the statement is taken in its context.

Our law relating to mentioning insurance in the trial of a case is that the jury cannot be directly apprised that a defendant carries liability insurance. *Leftwich v. Wesco Corp.*, 146 W.Va. 196, 119 S.E.2d 401 (1961), *overruled on other grounds, Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). We have recognized that where the word "insurance" is mentioned inadvertently at trial and not by design of the plaintiff or his counsel, this will not necessarily constitute reversible error. *Adkins v. Smith*, 142 W.Va. 772, 98 S.E.2d 712 (1957).

In *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), we held that it was not error for defense counsel to make several references in his closing argument to the fact that his client would have to pay the jury verdict. We recognized in *Kaiser* that in Syllabus Point 1, in part, of *Graham v. Wriston*, 146 W.Va. 484, 120 S.E.2d 713 (1961), *overruled on other grounds, Bradley v. Appalachian Power Co., supra*, we first held it was as improper to suggest the lack of insurance coverage as to suggest the availability of insurance coverage:

"In the trial of an action for recovery of damages for personal injury, wrongful death, or for property loss, alleged to be the result of negligence of the defendant ... the fact that such defendant does or ... does not carry insurance protecting him ... is immaterial."

In the present case, we do not believe the use of the words "good hands" in the context stated suggested insurance coverage was available. Consequently, we conclude

13. The relevant portion of the plaintiff's counsel's remarks was:

"I submit to you she came to you because she wants twelve Mingo County residents to decide her future—not one man, not me, not the Judge. She wants you to decide her future, as twelve individuals of reasonable I.Q. times twelve. You have fifteen hundred points of I.Q., not just one little mind. *We think she put her hands in good hands.* She has come to you. She trusts you and she will go with whatever you say. There is not anyone we know that would give up what she has given up for a hundred and three thousand dollars." (Emphasis added).

this was not a valid ground for setting aside the jury verdict.[14]

The Van Meters also argue that the trial court should have given their instructions numbered 1 and 2 which characterized the plaintiff as a licensee and then instructed the jury that the duty owed was not to "wilfully or wantonly injure the plaintiff," citing *Wellman v. Christian,* 147 W.Va. 189, 126 S.E.2d 375 (1962), and *Waddell v. New River Co.,* 141 W.Va. 880, 93 S.E.2d 473 (1956).

The problem with this theory is that it attempts to apply common law concepts of invitee, licensee, and trespasser to a case where a positive statutory duty exists in favor of the plaintiff-employee against the owner of her place of employment.[15] In this situation, courts have generally focused on whether the injured party was a member of the protected class, in this case an employee. *See Finnegan v. Royal Realty Co., supra; Hornsby v. Ray, supra; Repucci v. Exchange Realty Co., supra; Vergano v. City of New York, supra; Bevan v. Century Realty Co., supra; Hall v. Medical Building of Houston, supra; see generally,* Prosser & Keeton, *supra* § 63 at 434-46. We conclude the trial court committed no error on this issue.

Another cross-assigned error needs to be briefly mentioned in view of the fact that a new trial will possibly occur. The Van Meters complain that plaintiff's instruction number 1 incorrectly defines the general concept of negligence.[16] The first portion of the instruction is incorrect for it informs the jury that "negligence is that which an ordinarily prudent person would have done under the circumstances." This is the general test for nonnegligence. We have customarily defined negligence as "conduct unaccompanied by that degree of

consideration attributable to the man of ordinary prudence under like circumstances." Syllabus Point 4, in part, *Patton v. City of Grafton,* 116 W.Va. 311, 180 S.E. 267 (1935). In *Walker v. Robertson,* 141 W.Va. 563, 570, 91 S.E.2d 468, 473 (1956), *overruled on other grounds, Graham v. Wriston, supra,* we said that "[n]egligence is the failure of a reasonably prudent person to exercise due care in his conduct toward others from which injury may occur." (Citations omitted). An instruction similar to plaintiff's instruction number 1 should not be given upon the retrial of this case.

For the foregoing reasons, the judgment of the Circuit Court of Mingo County is affirmed, in part, and reversed, in part, and this case is remanded for a new trial.

Affirmed, in part, Reversed, in part, and Remanded.

---

**14.** Since we have held the verdict must be set aside on another ground, we decline to address whether the $450,000 jury verdict was excessive, as found by the trial court. Undoubtedly, as we noted earlier, the injection of the $103,000 in workers' compensation benefits may have affected the verdict in view of the argument by plaintiff's counsel that a verdict had to be over this amount for her to recover anything. We also do not address the ground that a juror was biased as a new panel will obviate this issue.

**15.** We note that a number of courts have either modified or abolished the distinctions made be-

tween invitees, licensees, and trespassers. Annot., 22 A.L.R.4th 294 (1983). Because we have found a statutory duty owed to the plaintiff, we do not need to address this issue.

**16.** Plaintiff's instruction number 1 states: "The Court instructs the jury that negligence is that which an ordinarily prudent person would have done under the circumstances or that it is something which an ordinarily prudent person would not have done under circumstances in the same or similar circumstances."