WILLIS, APPELLANT, ET AL., *v.* THE ECKERT PACKING CO., APPELLEE.

(No. 686—Decided December 19, 1969.)

*Mr. John E. Fulker,* for appellant.
*Messrs. Shipman, Utrecht & Dixon,* for appellee.

KERNS, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Miami County sustaining a motion of the defendant for a directed verdict at the conclusion of the plaintiff's evidence.

The plaintiff, Harvey Willis, appellant herein, was employed as a truck driver by Brush & Weaving Hair Manufacturing Company of Chicago, Illinois, which operates a business of brushing, processing, and selling animal hair for commercial usage.

The defendant, Eckert Packing Company, appellee herein, owns and operates a packing plant at Troy, Ohio.

The action was commenced by Harvey Willis and the

Pacific Insurance Company of New York, the liability insurance carrier for Brush & Weaving Hair Manufacturing Company, claiming damages for injuries sustained by Willis as a result of the alleged negligence of the Eckert Packing Company. On April 19, 1967, Eckert Packing Company filed an answer to the plaintiffs' amended petition generally denying the allegations contained therein. Thereafter, on November 14, 1968, Pacific Insurance Company was dismissed as a party plaintiff upon its own motion.

The facts upon which the action was based are related in the amended petition as follows:

"Plaintiffs further say that on the said 22nd day of January, 1965, at approximately 9:30 p. m., plaintiff, Harvey Willis, during the course of his employment, parked his employer's tractor-trailer truck beneath a hopper containing hog hair and located on the premises of the defendant, The Eckert Packing Company, in Troy, Ohio, that the floor of said hopper consisted of two sections, each of which was hinged on the outer edge and opened from the center in trap-door fashion. Each section of said trap-door floor was operated separately by a winch and pulley in order that each of said sections could be cranked open and closed by the operator.

"That at said time and place, plaintiff, Harvey Willis, was required to open the hopper floor in order to empty the contents of said hopper into his employer's truck-bed; in so doing, said plaintiff, Harvey Willis, had lowered one section of the hopper floor and was in the process of lowering the opposite section. At said time and place the crank and winch apparatus malfunctioned and the floor section sprang open, causing the winch to spin and the winch handle to fly off the winch and to strike plaintiff, Harvey Willis, on the left side of his head midway between his left eye and left ear. That said winch apparatus is hinged with a safety catch and ratchet which is designed to prevent the winch gears from spinning; that said safety catch and ratchet apparatus malfunctioned at said time and place."

The first assignment of error raises the question of

whether the Court of Common Pleas was justified in directing a verdict for the defendant.

It is axiomatic that in the solution of such a question all the evidence submitted must be given an interpretation most favorable to the plaintiff, including not only direct or positive evidence but also any reasonable inferences which may be drawn therefrom.

With this governing principle in mind, it is clear that the evidence presented in the instant case was sufficient to take the case to the jury upon the issue of negligence.

However, the record also reflects considerable undisputed evidence to show that the plaintiff was familiar with the defective apparatus, that he knew about the danger and risk involved in its use, and that he appreciated the possible consequences of operating it in its defective condition. As to this evidence, suffice it to say that in the ordinary case involving the doctrine of assumption of risk the plaintiff's own testimony would have been sufficient to defeat his right to recovery.

But Mr. Willis urges herein that the defense of assumption of risk was not available to the defendant because his (Mr. Willis') status on the premises of the Eckert Packing Co. was that of a "frequenter" as defined in Section 4101.01, Revised Code.

A "frequenter," as defined in that section, means "every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

In support of the argument that the defense of assumption of risk is not available to the defendant, the plaintiff relies upon the case of *Justice* v. *Shelby Ice & Fuel Co.,* 18 Ohio App. 2d 197, and we agree that the holding in the *Justice case* lends support to his conclusion.

However, we have encountered substantial difficulty in attempting to reconcile the conclusion in that case with the holdings in numerous other Ohio cases.

A contrary view was taken in the case of *Plas* v. *Holmes Construction Co.,* 157 Ohio St. 95. In that case, the Supreme Court of Ohio referred to the term "frequenter" and thereafter said, at page 99:

"By provisions of Section 6245, General Code, the defense of assumption of risk is not applicable in a suit by an employee against his employer, but there is no statutory provision taking away that defense on behalf of a defendant against one who is not his employee. The defenses of contributory negligence and assumption of risk were taken away from employers who were in turn given the benefit of the Workmen's Compensation Act. Here it is sought to take from this defendant the defense of assumption of risk to whom nothing is given in return."

In the case of *Davis* v. *Charles Shutrump & Sons Co.*, 140 Ohio St. 89, the court said, in the fourth paragraph of the syllabus:

"In an action by a contractor's servant against a contractee for injuries resulting to such servant because of the condition of the premises of the contractee, it is a valid defense that the conditions by which the injury in question was occasioned were known to and appreciated by the plaintiff and that as a consequence he is chargeable with an implied assumption of the risks arising from those conditions."

With respect to "frequenters," the courts have not regarded the subject statutes as exacting a duty substantially different from that imposed generally by Ohio law upon an owner of property towards an invitee. See *Ford Motor Co.* v. *Tomlinson*, 229 F. 2d 873, 74 Ohio Law Abs. 375, and the cases cited therein.

Noticeably, the definition of the term "frequenters" embraces business invitees, and, in view of the case law of Ohio on this subject, no one can seriously question the availability of the defense of assumption of risk as against business invitees. See 39 Ohio Jurisprudence 2d 615 *et seq.*, Section 80 *et seq.*

Although there is authority for confining the doctrine of assumption of risk to cases arising out of the master-servant or employer-employee relationship, or at least to cases involving a contractual relationship, it is now settled in Ohio that the defense of assumed risk may exist independently in negligence actions. 39 Ohio Jurisprudence 2d 615, Section 80; *Fay* v. *Thrasher,* 77 Ohio

App. 179. See, also, 65A Corpus Juris Secundum 283, Section 174.

The defense of assumption of risk is not applicable in a suit by an employee against his employer (Section 4113.-06, Revised Code), because of the inequality of their bargaining positions, but this same condition does not prevail as to "frequenters" because that term, by its own definition, alludes to the general public.

The plaintiff, while admitting that he recognized the danger of operating the hopper, argues further in this appeal that his acceptance of the risk was not *voluntary* because of the economic coercion of his employer. In this regard, the evidence discloses that Mr. Willis was fearful of losing his job or of being docked in pay if he failed to load his truck with the defective apparatus as directed by his employer.

This argument would not be without merit if the plaintiff was an employee of the defendant. In fact, such circumstances tend to show the underlying reason for the enactment of Section 4113.06, Revised Code.

But the plaintiff here was not an employee, general or special, of the defendant. He was neither under the direction nor subject to the control of the Eckert Packing Company. On the contrary, the evidence discloses that the operation of the loading device stemmed directly and exclusively from his employment as a truck driver by Brush & Weaving Hair Manufacturing Company. The defendant exerted no pressure upon Mr. Willis. His predicament, as disclosed by the evidence, was created and fostered by the unreasonable attitude of his employer, and his labor in operating the device was for the sole benefit of the employer.

In directing a verdict in this case, the trial court observed as follows:

"Even the most favorable interpretation of the evidence indicates that the plaintiff was entirely familar with the apparatus in question concerning the so-called defective winch and/or the defective apparatus in its entirety. He was not only familiar with the apparatus but was familiar with all the danger incident to the use of it. He had

operated it for years. He had previous trouble with it. He indicated that he knew he was likely to be injured if he used it. He knew it had no brakes and had not had for over five years, had bad gear teeth, had no spring on the dog or trip, and that the arm which together with the handle is used to operate the winch was loose with no way to tighten it. And at the time of the accident the plaintiff also had exclusive control of this winch and the entire apparatus.

"The court feels that the plaintiff knew the probable consequences of operating this defective winch and that he voluntarily exposed himself to the obvious and appreciated danger."

Our view of the evidence is not substantially unlike that of the trial court, and, accordingly, the first assignment of error must be overruled.

The second and third assignments of error have been considered and disposed of in our discussion of the initial assignment of error.

The judgment must, therefore, be affirmed.

*Judgment affirmed.*

SHERER and CRAWFORD, JJ., concur.