BAKER, ADMX., ET AL., APPELLANTS, *v.* OHIO FERRO-ALLOYS CORP., APPELLEE.

(No. 982—Decided July 6, 1970.)

*Messrs. Dresbach, Crabbe, Newlon, Brown & Jones* and *Messrs. Miller, Pfeifer, Burkhart & Batross,* for appellants.

*Messrs. Kincaid, Micheli, Geyer & Ormond,* for appellee.

PUTMAN, J.  Plaintiff is the widow of Charles O. Baker who was an employee of the Towne Construction Company of Canton, Ohio, hereafter called Towne.  For some time prior to Baker's death, Towne had been engaged in work

at the Philo, Ohio, plant of the Ohio Ferro-Alloys Corporation, hereafter called Ohio Ferro. Baker, with his fellow Towne employees, was working on a project which involved erecting heat shields for the purpose of protecting electrical conduits in the defendant Ohio Ferro's plant. It is undisputed that Baker was killed while so employed, when struck by a crane operated by an employee of Ohio Ferro (defendant) in the scope of his employment.

The petition alleges negligence on the part of defendant corporation proximately resulting in Baker's death, in the particulars that by and through its agents or employees it:

1. failed and neglected to notify or inform its agents and/or employees that the decedent would be working in the area of the crane;

2. failed and neglected to shut down the crane, knowing decedent would be working in the area;

3. failed and neglected to sound a warning horn or otherwise notify the decedent of the approach of said crane;

4. failed and neglected to maintain a lookout for decedent in said area;

5. failed and neglected to maintain the premises in a reasonably safe condition for the decedent;

6. failed and neglected to warn decedent that the crane would be operating;

7. failed and neglected to keep the premises as free from danger to the decedent as the nature of the employment and the circumstances existing at the time would reasonably permit.

The specifications above charge violations of the statutory language contained in R. C. 4101.01 (K) and R. C. 4101.11.

The first trial of this cause resulted in a plaintiff's judgment which was reversed and the cause remanded for a new trial for several reasons in which the Court of Appeals, of which this writer was not then a member, unanimously agreed, and for the further reason—from which one judge dissented—that there should have been an instruction upon the issue of assumption of risk. I find no indica-

tion that the Court of Appeals ever considered the proposition that assumption of risk was never available in law as a defense to personal injury actions brought for violations of the so-called "safe place" statutes. The dissent was based upon the contention that the facts in that record did not warrant the application of the doctrine as a matter of fact.

The second trial resulted in a defendant's verdict from which the plaintiff appeals assigning seven alleged errors.

The first such assignment complains of failure of the court to grant a new trial for reasons stated in the other assignments of error.

The second assignment of error complains that the trial court admitted evidence upon the issue of assumption of risk, and the third assignment complains of the court having submitted that issue to the jury.

## I.

Some further exposition of certain portions of the testimony is essential to an understanding of the issues raised by this appeal.

The plant in question consisted of two sections of separate roofs constructed over one large area enclosed within one walled enclosure. The floor or surface area was separated by a series of what are called "H beams" which were located twenty-five feet apart. All the space in between was open. The area on one side of the line of "H beams" contained smelting furnaces and was called the "furnace room." It was 550 feet long and 70 feet wide. The area in the same building on the other side of the imaginary line drawn connecting the "H beams" was called the "raw materials room," but there were other furnaces there also. It was 525 feet long and, also, 70 feet wide.

This case involves two overhead cranes which were constructed to run the length of the building. They hung from parallel overhead rails thirty-six inches apart at their centers, one on each side of the row of "H beams." These two parallel crane rails were at their closest points twenty-eight to thirty inches apart and, when the two cranes passed each other, which they did in normal opera-

tion, the clearance was sixteen inches between the cabs. The cranes travel about 225 feet per minute and require ten to twelve feet to stop. They were seventy feet above the floor.

Heat shields were being installed between two of the "H beams" to protect certain electrical conduits. The work was being done from the top of the crane in the furnace room, which was made available to Towne employees by Ohio Ferro only at such times as it was not being used in Ohio Ferro's normal operations which were not interrupted for the installation of the heat shields.

During this work the other crane, which ran on the "raw materials room" side of the line of "H beams," was continually in operation and never shut down during this installation.

Defendant, appellee herein, Ohio Ferro, defended vigorously at four separate levels of the negligence analysis.

It claimed no negligence on its part existed, because through its agents it had instructed a foreman of Towne to keep his men on the furnace room crane, and that one John Brown, a foreman of Towne, had instructed the workers, including the decedent, to do all the work from the furnace room side of the row of "H beams" and not to cross over to the rail of the crane in the raw materials room.

There was sufficient evidence to warrant a jury finding that decedent heard these orders.

This, the defendant, Ohio Ferro, claims was a compliance with its statutory duty (R. C. 4101.11) to do all things reasonably necessary to protect the safety of the decedent. Ohio Ferro argued, but did not plead, that the sole proximate cause of decedent's death was his own conduct in crossing to the crane rail where he was killed.

Ohio Ferro pleads that conduct of decedent, Baker, to be both contributory negligence and assumption of risk.

In support of the petition the plaintiff's evidence is substantially as follows. The defendant's Safety and Medical Director, Robert L. Payne, was at the plant at the time of the accident but was not aware that a heat shield was being installed on that day, had no instructions from any-

body to shut down the crane operating in the raw materials room, and was not aware that a heat shield was to be installed on the "H beam" between the two rooms.

To his knowledge no one told the crane operator of the raw materials room to shut down or tell him there would be men working in the area.

George Watson, age 72, was the crane operator. He had not been told anyone would be erecting heat shields "in the area around there" and "didn't know there was supposed to be any body out there at all on the tract [sic] or around the track [sic]."

"Q. Was there anything at all to obstruct your vision toward the area in which Mr. Baker was killed?

"A. Yes, it was smokey."

He said the cranes are 18 inches apart as they pass. He testified that the distance required to stop his crane "as fast as we run, generally stopping up it would take 10, 12 feet" and, further, that he "couldn't have seen him before he ran over him."

However, he testified that he had seen men earlier in the morning and knew "they were intending to put—reinstall that siding."

Denzil Trout was an employee of Towne working on the job. He said Baker and a fellow employee, Smith, were standing on the crane rail in the raw materials room holding a sheet for Trout to drill when the raw materials room crane struck and killed Baker.

Trout claimed he got no instructions from Ohio Ferro.

The problem was that the Towne employees had no vise-grips to prevent the drill from buckling out the sheets. This is why the men went to the other side to hold them against the pressure of the drill.

## II.

The trial court committed prejudicial error in its general charge in the particular hereafter set forth:

"You should first determine these disputed issues:

"1. Did the defendant fail to exercise ordinary care when it did not notify its employees that the deceased and other workmen of the Towne Construction Company would be working near a crane track in the raw materials build-

ing and did not have its crane men in the raw materials building maintain a lookout for the deceased and his fellow workers?

"2. Did the defendant fail to exercise ordinary care when it did not notify its employees that the deceased and other workmen of the Towne Construction Company would be working near a crane track in the raw materials building and did not require its crane men in the raw materials building to sound a warning horn or bell or to otherwise notify the deceased and his fellow workers of the approach of a crane?

"If you determine that the plaintiff failed to prove by a preponderance of the evidence that the defendant did not use ordinary care in either of the foregoing particulars your verdict must be for the defendant and you can terminate your deliberations."

That instruction took away from the jury the plaintiff's claim that the defendant corporation was negligent in failing to shut down completely during the time the work was being done by the crane which struck and killed decedent. This was plaintiff's specification number two contained in the petition and set forth above in this opinion. The instruction is also prejudicially erroneous because it lumps specifications of negligence one and four together in one paragraph and requires the plaintiff to lose if the jury finds either one but not both. Likewise, the second paragraph is bad for lack of clarity.

The claim that the crane operator was negligent with respect to lookout is a distinct and separate claim from that which charges the company with a duty to notify the crane man of decedent's presence and instruct him to maintain a lookout.

In this writer's opinion the crane operator was negligent as to lookout as a matter of law and this proximately contributed to the decedent's death, and this negligence is chargeable to the defendant company under the doctrine of *respondeat superior.*

However, under any view of the case, the plaintiff was entitled to at least a jury trial on this separate issue. Likewise her separate claim that the defendant company should have shut down the materials room crane during the

heat shield installation. In the opinion of this writer, plaintiff was entitled to a directed verdict in her favor on the issue of negligence and its proximate cause based on this claim, but at least the law gives her a right to a jury trial on it.

These errors require reversal.

### III.

The sixth assignment of error alleges that there were certain prejudicially erroneous interrogatories which the jury was required to answer. They do not consist of inquiries respecting "material allegations contained in the pleadings controverted by an adverse party" as required by the express language of R. C. 2315.16. *Miller* v. *McAllister* (1959), 169 Ohio St. 487, paragraph two of the syllabus. *Justice* v. *Shelby Ice & Fuel Co.* (1969), 18 Ohio App. 2d 197, paragraph two of the syllabus.

Those interrogatories were as follows:

"INTERROGATORY No. 1:

"Do you find that the bridge of the crane located in the furnace room building, while it was shut off, locked out and being occupied by a Towne Construction Company safety man, was a safe place from which to perform the work of erecting the heat shield providing the workmen remained thereon.

"ANSWER: Yes.

"INTERROGATORY No. 2:

"If your answer to Interrogatory No. 1 is no, state in what particulars you find said work place to have been unsafe.

"No ANSWER.

"INTERROGATORY No. 3:

"Did the decedent, Charles O. Baker, or any other member of the Towne Construction Company crew engaged in the task of erecting the heat shield, call to the attention of the crane operator in the raw materials building or any officer, agent or employee of Ohio Ferro-Alloys Corporation, the fact that he and Sherman Smith were going over on to the crane rail in the raw materials building in order to accomplish their task?

"ANSWER: No.

"INTERROGATORY No. 4:

"Do you find that any officer, agent or employee of the defendant, Ohio Ferro-Alloys Corporation, knew, or, in the exercise of ordinary care, should have known, that the decedent, Charles O. Baker, could be on the crane rail in the raw materials building while carrying out his job of assisting in the installation of the heat shield?

"ANSWER: No.

"INTERROGATORY No. 5:

"If your answer to Interrogatory No. 4 is 'Yes,' name said officer, agent or employee.

"No ANSWER.

"INTERROGATORY No. 6:

"With respect to the action of the decedent, Charles O. Baker, in going over on to the crane rail in the raw materials building, do you find that, in performing the work of erecting the heat shields, it was:

"(a) necessary; or

"(b) merely quicker and more convenient; or

"(c) both?

"ANSWER: B.

"INTERROGATORY No. 7:

"Considering the evidence as to the operation of the bridge cranes in the raw materials building during the course of the work involved in erecting the heat shield, do you find that the crane rail, over which said bridge cranes in the raw materials building traveled, was an inherently dangerous place upon which to sit or stand while erecting the heat shield?

"ANSWER: YES."

Some of those are not controverted material allegations of the pleadings and some of them do not even pretend to be. They ask the jury to write an essay type answer. No statutory authority exists for this practice.

The interrogatories which can be answered by "yes" or "no" inquire as to matters neither expressly pleaded and, therefore, were not, nor could they have been, controverted.

Those who do not concur in this view gingerly avoid stating how it is possible to "controvert" a "material allegation" which is not expressly pleaded.

One interrogatory is a multiple choice question. None

of the three choices is pleaded. Moreover, this form is without statutory authority. Another one asks the jury if they find in a previous question that one of defendant's officers had certain knowledge to "name the officer." This form is without statutory authority.

For these reasons the sixth assignment of error is well taken. It requires reversal and remand for a new trial which is hereby ordered.

To facilitate verification that the pleadings do not contain controverted material allegations which are the subject of the interrogatories, there is attached to this opinion as a part hereof the petition, answer and reply as Appendices A, B and C, respectively.

## IV.

The fifth assignment of error complains of failure of the trial court to grant a mistrial. It is well taken and is sustained.

This case should be reversed because of the fifteen minute conversation between defense counsel and some jurors during which counsel for defendant complimented, in the presence of some jurors, his own witness, an employee-officer of defendant corporation, for substantial expenditures by the defendant corporation for air pollution control because of smoke from defendant's plant that one of the jurors commented upon. No matter how innocent and well intentioned they may be, there are certain unfortunate honest accidents which happen during jury trials which, if permitted to stand, would shake the confidence of laymen in the fairness of judicial proceedings.

Matters falling into such a category compel reversal without any other showing of prejudice. *Railroad* v. *Porter,* 32 Ohio St. 328. This is true not because of what the event meant to the jurors in this case but because of the confidence-shaking effect upon future cases, which would result from appellate disregard of such events.

Whether the conversation does or does not relate to the trial, this conversation requires reversal of this case.

Its substance appears as follows:

"Whereupon, the following transpired in chambers, commencing at 3:35 o'clock p. m.

"The Court: Frank, we have a complaint.

"Mr. Batross: Your Honor, at this time for the record I would like to register a complaint that I think it is highly improper for defendant's counsel and Mr. Robert Payne, the Safety Officer, to conduct a fifteen minute conversation with two members of the jury and to discuss the matter of Ohio Ferro-Alloys and the Ohio Power operations in regard to during their discussion. Therefore, at this time I will move for mistrial.

"Mr. Micheli: Let me go on the record. You were present and overhead every bit of that conversation, did you not?

"Mr. Batross: I sat right there and listened.

"Mr. Micheli: Did we discuss this case in any respect we are trying right now? Yes or no, Batross, did we discuss this case we are trying right now?

"Mr. Batross: Let me make this statement that a statement was made as to the heaviness of the smoke and you turned to Mr. Payne and said words to the effect 'I have to commend you upon spending the kind of money you are spending.'

"Mr. Micheli: One of the jurors commented when the air is heavy how it hangs over the highway, billowing clouds of smoke that comes out of the plant. It's no secret they are spending money to correct it. You know damn well, Bob, it had nothing to do with the plant. The juror commented about it, even prefaced it 'Have you ever been down there on a day when the air is heavy? It looks like fog on the road.'

"Mr. Batross: I didn't say that I heard the statement made.

"Mr. Micheli: By God in fifteen years I have never been accused of influencing the jury and I don't appreciate it.

"Mr. Batross: I didn't say you were influencing the jury. It's highly improper to be discussing things with the jury—for a fifteen minute period with two members of the jury.

"Mr. Micheli: And yet you sat right there listening to every word and you yourself knowing we were not discussing the case.

"Mr. Batross: I didn't hear every word.

"Mr. Micheli: Let me just say this. Now, of course, we can call that jury in there and check the two men that were out there and we can get their version.

"The Court: I am going to overrule the motion."

A reasonably impartial observer might well conclude that the subject of "billowing clouds of smoke that comes from the plant" and "hangs over the highway like fog" was "relevant to this trial," taking into consideration that Baker, plaintiff's decedent, was killed by a crane whose operator had testified that his vision was obscured by smoke in that plant and that he couldn't have seen him (decedent) before he ran over him.

Careful consideration has been given to the fact that one hundred ninety pages in the bill of exceptions after the court overruled plaintiff's motion for mistrial because of the incident above discussed a complaint was made by defense counsel to the trial court that plaintiff's counsel had thereafter remarked to a juror that, in substance, it was "expensive to raise four girls."

That incident only illustrates the indispensable need for strict enforcement of the rule above discussed. Once it appears to counsel that he is in a proceeding where apparent friendliness with and solicitous conduct toward jurors will be tolerated, the unavoidable temptation is to disregard all barriers and play the game under the loose rules newly learned.

The trial then disintegrates into a no-holds-barred free-for-all to curry favor with the jury.

Only an automatic reversal on appeal when the one who starts it in the trial court wins the trial will bring effective pressure upon the participants to prevent these regrettable accidents.

### V.

The reasons why no charge should have been given on assumption of risk on this record are, in my opinion, two-fold.

It is unavailable in law on the facts in this case in defense against the claim of violation of R. C. 4101.11 by the corporate employer in not shutting down the crane, for reasons hereafter set forth. It is inapplicable in fact on

this record to the claim of negligent lookout by the crane operator, for reasons set forth by Judge Rutherford in his partial dissent written in his concurrence with the reversal of the plaintiff's judgment after the first trial.

In my opinion, as a matter of law, the defense of assumption of risk can never be used by an employer to reduce or relieve him of the duties imposed upon him by the criminal provisions of R. C. Chapter 4101.

For this separate reason it was prejudicial error to charge the jury on the defense of assumption of risk.

It is a crime (R. C. 4101.99) for employers (R. C. 4101.01 (C) ) to fail to do for frequenters (R. C. 4101.01 (E) ) the things for their safety required by R. C. 4101.11 and R. C. 4101.12.

It is a crime because the Legislature has said it is a crime. This plaintiff, the appellant herein, claims to be the widow of an alleged victim of such a crime.

It negates the public policy behind these particular criminal statutes to permit their violators to escape their duty by claiming a voluntary assumption of risk of their nonperformance. In "safe place" statute cases the fact of inequality of bargaining power makes the assumption of risk, where present, not voluntary.

This has been said clearly and repeatedly. *Ziehr* v. *Maumee Paper Co.* (1905), 7 C. C. (N. S.) 144, 160. Prosser on Torts, 1964 Hornbook, 457, citing the Supreme Court of Ohio in the 1916 case of *Pittsburgh, C., C. & St. L. R. Co.* v. *Kinney,* 95 Ohio St. 64. *Hauer* v. *French Brothers-Bauer Co.* (1931), 43 Ohio App. 333, paragraph three of the syllabus. *Justice* v. *Shelby Fuel & Ice Co.* (1969), 18 Ohio App. 2d 197.

This is no novel doctrine. It is as old as the struggle of working people for adequate protection from and compensation for injuries. It is a history of repeated legislative victories by employees in direct response to persistent hostile doctrines of judge-made law.

There is no evidence in this record that Baker, the decedent, was free to walk off this particular job without being fired for all purposes if he felt the conditions were too hazardous, if in fact he knew of the hazards inherent

in the continued operation of the other crane manned by an unwarned operator.

The inequality in bargaining power resulting from the economic compulsion inherent in Baker's status as anyone's employee in this situation renders involuntary any act of his in intentionally proceeding in the face of a known hazard existing because of the violation of criminal statutes enacted for his protection.

It is a distinction without a difference to talk about whether he was defendant's employee or the employee of an independent contractor. The only important consideration judicially is that the Legislature covered him in either status by the definition of "frequenter" and protected him by criminal sanctions against the very hazard claimed to have killed him.

Nor is it any answer to this claim that R. C. 4113.06 does not mention "frequenters." That section is limited by its opening sentence to an "action described in Section 4113.03" and is limited in its scope to cases arising out of R. C. 4113.03. Naturally, R. C. 4113.06 does not mention "frequenters." The reason why it doesn't mention frequenters is quite simple. R. C. 4113.06 deals only with R. C. 4113.03 cases, and R. C. 4113.03 does not deal with "frequenters." R. C. 4113.03 is a legislative repeal of the common-law judge-made, employer-oriented, industry-subsidizing "fellow servant" rule.

This common-law "fellow-servant" rule is a landmark in the long history of judge-made law denying recovery to workmen injured in industrial accidents. See *Priestly* v. *Fowler* (Exch., 1837), 150 E. Rep. 1030, 3 M & W 1.

It is a cruel irony that a piece of legislative material (R. C. 4113.06) designated to give recovery for injuries resulting from hazards in employer-employee suits should be twisted and cited as authority to defeat recovery in frequenter-employer cases. See, for example, *Willis* v. *Eckert Packing Co.* (1969), 21 Ohio App. 2d 117. Even at common law, the "fellow-servant" rule never barred an employee of an independent contractor from recovery against a defendant other than his employer. Therefore,

logically and understandably R. C. 4113.06 would not mention frequenters. Frequenters were never barred by the rule R. C. 4113.06 repeals.

The employer owes the duty to "frequenters" because the statute says so. This decedent was a "frequenter" because the statute says so. The public has an interest in the duty being performed. The law will not tolerate the employee or the "frequenter" to "consent" to the commission of crime. The assertion that an employee of an independent contractor has greater economic equality or bargaining power than the employer's own employee is a judicial fabrication with no factual support in the record.

The foregoing is an entirely different and separate point from that made by Judge Rutherford in his separate opinion concurring in the judgment of reversal of the former trial. The substance of his position as concerns this point, and as this writer understands it, and agrees, was that on this and the former record there is no evidence that in fact the worker was actually aware of the hazard which caused his death. (Subsequent negligence of the crane operator.)

The point of this separate writing is to agree with that narrow point which has nothing to do with R. C. Chapter 4101 ("safe-place statutes") and to face directly an important issue raised by the facts in this case, and, specifically, the claim that entirely apart from the crane operator's subsequent negligence, the company violated its safe-place duties by running the crane during the work, under all the facts of this case.

No claim is made that issues under the safe-place statute and assumption of risk can never exist in the same action. What is claimed is that where the two-pronged safe-place statutory duty exists on the facts, as here, breach of that duty cannot be denied, nor consequences of that breach defended against by asserting that the injured party "voluntarily assumed the risk" of that specific breach of duty.

It is conceivable that an action might be brought on two separate grounds such as breach of statutory duty under R. C. 4101 *et seq.* and, also, breach of common-law

duty. In such an action assumption of risk would be available in law, if warranted by the facts, to avoid liability for the breach of the common-law duty. But it could not be used in defense of the allegation of the so-called "safe place statute," R. C. 4101 *et seq.*, violation. In such a situation it could be said that "issues under the so-called 'safe place statutes' and of assumption of risk exist in the same action." However, if they do "exist in the same action" great care must be taken to be positive that the jury does not use assumption of risk to defeat liability if they find that a breach of an applicable safe-place statutory duty proximately contributed to cause the injury.

It is not important whether both these "legal animals" may exist in the same zoo. What is important is that the court must not, as here, pit one against the other in the same cage.

If a Chapter 4101 violation is found by the jury, assumption of risk is no defense to it even if Baker was aware of its hazards. That fact, if it be a fact, would be for the jury to weigh in determining whether the worker acted unreasonably in the light of the foreseeable hazards so as to be negligent contributorily. But in no event should the jury have been submitted the issue of or instructed upon voluntary assumption of the risk of respecting any such statutory violation proximately contributing to cause Baker's death because economic weakness makes the act not voluntary.

It has been clearly set forth by our Supreme Court, and various text writers, that the two doctrines are separate but overlap in some cases. The Ohio cases are collected in 39 Ohio Jurisprudence 2d 620, Negligence, Section 83, Supplement, page 62, and the general principle is set forth in Prosser's Hornbook Law of Torts, 3rd. Ed. 450-469, Section 67.

All this being as it is, the point is that the legal doctrine of assumption of risk is not available to this defendant.

The fact, if true, that the plaintiff knowingly faced a hazard arising out of a R. C. Chapter 4101 violation, of which he was subjectively aware, and that he was killed

by that hazard will not bar his widow's recovery, unless it can be said that he was negligent under all the other circumstances in so doing and, additionally, that such negligence was a proximate cause of his death.

As a matter of fact, Baker cannot be said to have assumed the risk of the crane operator's ignorance of his, Baker's, presence working in the area, because there is no evidence Baker knew of this ignorance. Furthermore, as a matter of law, Baker had a right to rely upon Ohio Ferro's crane operator exercising reasonable care with respect to look-out, and in this respect the defendant was negligent as a matter of law.

In my opinion, the failure to take this simple, easy, inexpensive bit of care was, as a matter of law, the sole proximate cause of the death of Baker. The least plaintiff is entitled to is a jury trial on that issue. This record is void of evidence that Baker ever had subjective actual knowledge that the crime of failing to do all things reasonably necessary for his safety was being committed in this respect until he was killed by the very hazard inherent in that criminal act.

## VI.

I find no rule of law which enshrines error. Some reference has been made to a collection of cases grouped under the heading of "Successive Review" and the doctrine of the "law of the case." They are collected in 4 Ohio Jurisprudence 2d, Appellate Review, Sections 831, 1014, 1171 and 1173. Of particular note is *Kern* v. *Contract Cartage Co.* (1936), 55 Ohio App. 481, motion to certify overruled February 24, 1937.

As stated by Chief Justice Marshall in *Gohman* v. *St. Bernard*, 111 Ohio St. 726, the doctrine is not approved:

"As a rule of binding force, but as a salutary rule of practice, which should be applied in all cases where it may be employed as a shield against endless litigation, and to compel obedience of trial courts to the mandates of reviewing courts, and not as a sword which may be employed as an instrument of oppression and injustice."

I find nothing in the record of the prior case, decided before this writer became a member of this court, to indi-

cate that this court was called upon to decide or that it ever considered the precise question of the applicability of the doctrine of assumption of risk to avoid "safe place" statute duties where existent, but only the narrow factual question whether there was evidence of awareness of the hazard in this particular case so as to invoke it in fact if available in law.

For these reasons I do not find the error in respect of the legal unavailability of the defense of assumption of risk in this type of case to have been visited upon the trial court on re-trial by the former decision of this court on review.

## VII.

Boiled down to the nub, Baker as an employee of Towne and a frequenter (R. C. 4101.01) on the premises of Ohio Ferro had a right under positive Ohio statutory enactment (R. C. 4101.11 and R. C. 4101.01 (K) ), in the absence of actual knowledge to the contrary, to rely upon management doing its positive duty, legislatively imposed and criminally sanctioned to make the place where he was working reasonably safe under all the circumstances, and to do all other things reasonably necessary for his safety. In this writer's opinion, as a matter of law under the evidence in this case, that duty was to stop operation of the second crane until the work atop the first was completed. At least the plaintiff had a right to a jury trial upon that issue.

Secondly, in this writer's opinion, there having been a failure to shut down the second crane completely during the work, it was a breach of the statutory duty (R. C. 4101.11) to do every other thing reasonably necessary to protect decedent's safety for defendant to man that crane with an operator who, by his own testimony, had his vision obstructed by smoke and was never told of the work being performed within eighteen inches of his crane cab's path. Again, at least plaintiff had a right to a fair jury trial on this issue.

The argument that the small space atop the crane was a "safe place" had decedent stayed there is an evasion of the existence of the second prong of the statutory duty

(R. C. 4101.11) which is to do every other thing reasonably necessary to protect decedent's safety.

The crux of the error which led the trial court astray both in its instructions and interrogatories is that defendant must do both of two separate and distinct things under R. C. 4101.11.

Specifically it must provide a safe place and also "do every other thing reasonably necessary to protect the life, health, safety, and welfare of" employees and frequenters.

Whether defendant did both things was never fairly presented to the jury.

This was the trial court's affirmative duty and exists without express request. It flows from the duty to give a clear, correct and adequate general charge.

It is one thing for the defense to claim that both branches of the statutory duty and the general duty of ordinary care were met by providing a "small place, safe if you stay there," but the trial court must not decide this to be a compliance as a matter of law and thereafter limit its submission to the jury to the narrow fact question of whether defendant did it.

The jury must be told in clear, simple language that they have to decide at least three things in this connection:

1. Did the defendant in fact provide a place which was safe had Baker stayed there?

2. Was the restriction that Baker be confined to such a small place a legal violation of the safe-place requirement?

3. Was shutting down the materials room crane during the installation of the heat-shields a reasonable thing for defendant, Ohio Ferro-Alloys, to do for Baker's safety under all the evidence?

## VIII.

The fourth assignment of error makes no reference to any page of the bill of exceptions containing the alleged error, and we do not find it. It is overruled.

## IX.

For reasons previously stated, evidence bearing upon the state of mind of Baker relative to his alleged awareness of hazards and his intentional conduct respecting those

hazards are relevant to the claim of contributory negligence and properly received if it was in issue. Therefore, the second assignment of error complaining of testimony "in relation to assumption of risk" is not well taken because of the finding of a majority of this court that a jury question existed as to contributory negligence.

The first, third, fifth and sixth assignments of error are sustained.

The second, fourth and seventh assignments of error are overruled.

> *Judgment reversed and cause remanded for new trial and other proceedings according to law.*

RUTHERFORD, J., concurs in the syllabus and, for the reasons set forth in this concurring opinion, in the judgment of reversal and remand of the cause for new trial.

I do not wish to express an opinion relating to all issues which might be raised by the "safe place statutes" (R. C. 4101.01 *et seq.*), assumption of risk, or the correctness of interrogatories, but shall try to limit my concurrence to those issues as they relate solely to the facts of this case.

For a more detailed discussion relative to the application of the "safe place statutes" and the decisions of the Supreme Court of Ohio relative thereto, see this writer's concurring opinion in *Justice* v. *Shelby Ice & Fuel Co.* 18 Ohio App. 2d 197, at 207.

In the instant case, there is no question that Charles O. Baker, the decedent, as an employee of Towne Construction Company, the independent contractor, while working on the premises of Ohio Ferro-Alloys Corporation, was a frequenter within the meaning of that term as used in R. C. 4101.01, 4101.11, and 4101.12, for the defendant's premises upon which Towne Construction Company, the independent contractor, and Charles O. Baker, its employee, were doing work remained under the control of and the right of control of the defendant, Ohio Ferro-Alloys Corporation. The crane which struck decedent causing his death was operated by an employee of the defendant, Ohio Ferro-Alloys Corporation, acting within the scope of his employment.

R. C. 4101.11 and 4101.12 place upon the employer the duty to furnish a place which is safe by doing everything reasonably necessary to protect the life, health, safety and welfare of employees or frequenters.

The first interrogatory presented upon request of defendant reads as follows:

"Do you find that the bridge of the crane located in the furnace room building, while it was shut off, locked out and being operated by a Towne Construction Company safety man was a safe place from which to perform the work in erecting the heat shield providing the workman remained thereon?"

The question is misleading and not a finding of ultimate fact in that it relates to a particular place being safe to perform the work absent any finding relative to whether such safe place from which the work could be performed was a reasonably adequate place from which to perform the work to be done, or, as stated by Judge Putman, the argument that the small space atop the crane was a "safe place" had decedent stayed there is an evasion of the existence of the second prong of the statutory duty— which is to "do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters."

The reason decedent was on the raw materials side of the building, according to the evidence, was the lack of vice-grip pliers necessary to perform the work from the furnace room side. For this reason Charles O. Baker had accompanied his foreman onto the rail on the raw materials side of the "H beams" where the heat shields were being constructed in order to assist in an operation which was not only quicker and more convenient but necessary without the use of vice-grip pliers.

Defendant sought an answer to the question of adequacy of the place provided as relative to Interrogatory No. 1, *supra*, by submission of Interrogatory No. 6 as follows:

"With respect to action of the decedent, Charles O. Baker, in going over to the crane rail in the raw materials room, would you find that in performing the work of erecting the heat shields it was

"(a) Necessary;
"(b) Merely quicker and more convenient; or
"(c) Both? .........................
"ANSWER: (b)."

While I cannot concur in the finding that interrogatories cannot be answered in narrative form but must be such as can be answered only yes or no, I do concur that it is error to ask an interrogatory which limits the answer in the form of multiple choice without leaving an option to the jury. The purpose of interrogatories is to obtain findings on evidentiary matters as distinguished from a special verdict which requires the jury to find separately "upon each determinative issue." There is no provision for a narrative form of verdict. See *Miller* v. *McAllister*, 169 Ohio St. 487. I know of no such limitation applicable to a jury's finding of ultimate material facts in answer to interrogatories, and in answering an interrogatory the jury ought not be confined to such a multiple choice answer as selected by the interrogator without being afforded any alternative of making their finding of ultimate fact in such manner as they determine from the evidence to be responsive to the question stated.

For the reason stated, I concur in the finding of Judge Putman that the submission of Interrogatories Nos. 1 and 6 in the form requested constituted error prejudicial to the plaintiff.

On the first trial of this cause, the trial judge refused to give instruction upon the issue of assumption of risk, and a jury verdict was returned in favor of the plaintiff. Upon appeal, members of this court held that refusal to so charge upon assumption of risk was error prejudicial to the defendant. Motion to certify was overruled by the Supreme Court, and, upon retrial, the Common Pleas Court, in compliance with the judgment rendered by this court on the first appeal, instructed on assumption of risk, which is now one of the assigned errors on this appeal from the judgment for defendant rendered on the jury's verdict on retrial.

In my opinion, there are some circumstances in which issues under the "safe place statutes" and of "assumption

of risk" can exist in the same action. However, I am in agreement that the issue of the assumption of risk can never be used in a manner so as to decrease or relieve an employer from any duty imposed by the "safe place statutes" (R. C. 4101.01 *et seq.*). Where a place provided by an employer for a frequenter to perform the work undertaken is in compliance with the "safe place" statutes, being both reasonably safe and reasonably adequate to provide all that is reasonably necessary to protect the life, health and safety of employees and frequenters, I can comprehend possible circumstances where a frequenter, by undertaking performance of a task which in and of itself is inherently dangerous or by venturing into other parts of the plant, would assume risks, but not such risk as, limited to the facts of this case, arises from subsequent acts of the employer in control.

As stated in my dissenting opinion on the first appeal, the crane on the raw materials side was being operated by an employee of Ohio Ferro-Alloys Corporation, owner of the premises. At the time the decedent and his foreman started to work on the raw materials side, the crane which later struck him was stationary and unloading materials a distance of 160 feet up the track.

The crane was controlled by an operator whose view of the place where decedent and his foreman were working was unobstructed other than to the extent of smoke created within the defendant's plant. On the crane was a clanger or a gong of sufficient volume to give a signal above other noises and a foot brake with which the crane could be stopped within a distance of ten feet.

After the unloading operation, the crane was operated along the track by an agent of the defendant. The operator testified that he did not observe the employees of the independent contractor working on the rail and did not sound the gong or apply the brake. Decedent's foreman, who was standing on the same rail, observed the crane in time to avoid it, but the decedent, who was working from a sitting position, did not. He was struck and killed.

In my opinion, it was error to charge on assumption of risk with reference to subsequent negligence of the own-

.er in the operation of its crane. Assumption of risk is based upon knowledge of obvious existing conditions. Charles O. Baker could not be charged with knowledge, nor would it appear obvious that the crane operator might thereafter be negligent in failing to give warning by sounding the crane's gong or in failing to use the foot brake to stop the crane so as to avoid striking persons working on the rail. A person cannot voluntarily act with reference to a condition or situation created by the negligence of another when that negligence has not yet occurred. He may presume that ordinary care will be exercised by the other person, until he has knowledge to the contrary. See *Ricks* v. *Jackson,* 169 Ohio St. 254, which holds, in the syllabus:

"1. In the absence of evidence that a person knew of a danger or that the danger was so obvious that he must be taken to have known of it, it cannot be held that such person assumed the risk of injury from such danger.

"2. One using the highway does not assume the risk of the negligent operation of a vehicle thereon where such one does not know of such negligent operation in sufficient time to avoid its consequences by the exercise of ordinary care.

"3. It is error to charge a jury with respect to the issue of assumption of risk where there is no evidence to support that issue."

The issue raised by the evidence, as pertaining to conduct of Charles O. Baker, was one of contributory negligence as distinguished from assumption of risk. As stated in the third paragraph of the syllabus of *Ricks* v. *Jackson,* *supra,* it was error to charge the jury with respect to assumption of risk where there is no evidence to support that issue. Such error is prejudicial if absent such error the verdict might have been different. Evidence that the verdict might have been different absent a charge on assumption of risk is clearly supported by the fact that in the first trial, in the absence of a charge on this issue, a verdict for the plaintiff resulted.

I have considered the possibility, but under the facts of this case, as a matter of law, even were the jury to have

found that Charles O. Baker or his superior was told not to work from the raw materials side where he was injured, I would find him not to have become a trespasser under the circumstances in which he was performing work in that area.

For the reasons stated, I concur in the finding that the charge on assumption of risk by Charles O. Baker, upon the facts of this case, was error prejudicial to the plaintiff.

During the trial, at recess, defense counsel and an officer of Ohio Ferro-Alloys Corporation, the defendant, which officer was also a witness for Ohio Ferro-Alloys Corporation, carried on a conversation with two of the jurors, which conversation related, among other things, to efforts being made by Ohio Ferro-Alloys Corporation toward pollution control. By the testimony of the jurors the conversation continued for a period of from ten to fifteen minutes. Counsel for the plaintiff timely called this occurrence to the attention of the court and moved for a mistrial, which the court overruled. While such conduct on the part of either counsel or a party who is a witness either individually or as officer of a corporation may be excusable from the standpoint of its not having been carried on with any intention of influencing the jury, it is not proper, leads to a reasonable inference by the opposing party that he has not had a fair trial and cannot be either justified or condoned.

I, therefore, concur in the finding that it was error prejudicial to the plaintiff to have overruled the plaintiff's motion for a mistrial, which motion was timely made.

I concur in the finding that it was prejudicial error to charge the jury that, if plaintiff failed to prove defendant negligent either in failing to have its men maintain a lookout or in failing to give a warning, their verdict must be for defendant, for the reason that such instruction requires plaintiff to lose if the jury finds the defendant negligent in one but not both.

I cannot agree with the statement in the opinion of Judge Putman that "it is a distinction without a differ-

ence to talk about whether he [the decedent] was defend-ant's employee or the employee of an independent con-tractor.'' If he had been an employee of defendant, Ohio Ferro-Alloys Corporation, the administrator of his estate would have participated in the State Insurance Fund (workmen's compensation) based upon his employment by defendant rather than upon his employment by the in-dependent contractor, and by such participation the instant action against defendant, Ohio Ferro-Alloys Corporation, would be barred.

For the reasons which I have set forth, I concur in the reversal of the judgment appealed from and the remand of this cause for new trial.

Van Nostran, P. J., concurring in part and dissenting in part.

I concur in paragraph one of the syllabus referring specifically to the conversation which took place among counsel of one of the parties, one of the witnesses and several of the jurors.

I respectfully dissent from paragraphs two and three of the syllabus for the following reasons:

The answer filed by the defendant specifically pleaded as a third defense ''assumption of risk,'' and from a read-ing of the record I find that there is ample evidence that the decedent, together with his fellow workers, was warned by his immediate supervisor not to enter the raw materials building and to remain in the mill furnace build-ing where arrangements had been previously made to shut down the No. 2 crane. The record further shows that the decedent, Charles O. Baker, in attempting to work with another fellow employee and while standing on the rail over which the No. 1 crane traveled, was in violation of an express directive and thereby assumed the risk of any and all harm which might befall him in so doing.

I further concur that prejudicial error resulted as to the submission by the trial court of defendant's Inter-rogatories Nos. 1 and 6 as set forth in Judge Rutherford's concurring opinion.

APPENDIX "A"

IN THE COURT OF COMMON PLEAS,

MUSKINGUM COUNTY, OHIO

THELMA V. BAKER, AS THE          :
ADMINISTRATRIX OF THE ESTATE
OF CHARLES O. BAKER, DECEASED     :
517 WATER STREET
PHILO, OHIO                       :
                                        CASE No. 43886
        PLAINTIFF                 :

        v.                        :
                                        P E T I T I O N
OHIO FERRO-ALLOYS CORPORATION,    :
A CORPORATION,
CANTON, OHIO                      :

        DEFENDANT                 :

1. The plaintiff, THELMA V. BAKER, Administratrix of the Estate of CHARLES O. BAKER, Deceased, says that by order of the Probate Court of Muskingum County, Ohio, she was and is the duly appointed, qualified and acting administratrix of the Estate of CHARLES O. BAKER, Deceased, late of Muskingum County, Ohio, who died on the 2nd day of November, 1962, and left surviving him, THELMA V. BAKER, surviving Spouse, CHARLES BAKER, JR., son and BONNIE JESSE, Daughter, who are his only next of kin and sole heirs at law, who have suffered pecuniary loss by reason of the death of the decedent and for whose benefit this action is commenced.

2. Plaintiff says that the defendant is a corporation organized under the laws of the state of Ohio.

3. Plaintiff further says that on or about the 2nd day

of November, 1962, while the said CHARLES O. BAKER was engaged in the business of iron working and performing services for the Towne Construction Company, an independent contractor, at the Philo, Ohio, plant of the defendant herein, one GEORGE RAYMOND WATSON, an agent and/or employee of the defendant OHIO FERRO-ALLOYS CORPORATION, while acting within the scope and course of his employment with and for said defendant, did negligently and carelessly operate a crane whereby the said crane did strike the said CHARLES O. BAKER, causing serious bodily injuries and death by reason thereof.

4. Plaintiff further states that the defendant, by and through its agents and/or employees, failed and neglected to notify or to inform its agents and/or employees that the said decedent would be working in the area of said crane, failed and neglected to shut down said crane full well knowing that the decedent would be working in said area, failed and neglected to sound a warning horn or otherwise notifying the decedent of the approach of said crane, failed and neglected to maintain a lookout for the decedent in said area for the safety of the decedent, failed and neglected to maintain the premises in a reasonably safe condition for the decedent, failed and neglected to warn the decedent that said crane would be operating and of its danger and failed and neglected to exercise ordinary care to keep the premises as free from danger to the decedent, while there employed, as the nature of the employment and the circumstances existing at the time would reasonably permit.

5. That as a direct and proximate result thereof, the said CHARLES O. BAKER sustained an eviscerated crushed pelvis, compound fracture of the right arm and leg, hemorrhage and shock and as a result thereof, his death was caused on the 2nd day of November, 1962, whereby the next of kin and heirs at law were damaged in the sum of Fifty Thousand Dollars ($50,000.00).

WHEREFORE, plaintiff prays for judgment against the defendant in the sum of Fifty Thousand Dollars ($50,-000.00), with interest and costs.

APPENDIX "B"

IN THE COURT OF COMMON PLEAS,

MUSKINGUM COUNTY, OHIO

THELMA V. BAKER, AS THE     :
ADMINISTRATRIX OF THE ESTATE
OF CHARLES O. BAKER, DECEASED   :

              CASE No. 43886

    PLAINTIFF       :

    v.           :

              A N S W E R

OHIO FERRO-ALLOYS CORPORATION,   :

    DEFENDANT       :

FIRST DEFENSE:

Now comes the defendant, and for answer to plaintiff's petition admits:

(1) The allegations of paragraph one of plaintiff's petition;

(2) The allegations of paragraph two of plaintiff's petition;

(3) That on or about the 2nd day of November, 1962, Charles O. Baker was engaged in the business of iron, working and performing services for the Towne Construction Company, an independent contractor, at the Philo, Ohio, plant of the defendant.

(4) That on said date and at said place an accident occurred whereby said Charles O. Baker suffered injuries which directly and proximately resulted in his death.

Further answering defendant denies each and every allegation of plaintiff's petition except those expressly admitted herein.

SECOND DEFENSE:

For its second defense to plaintiff's petition, defendant realleges and incorporates herein as though fully rewritten all of the allegations of its first defense, and further states that in the general area where the accident in ques-

tion occurred there was located two large over-head cranes. The crane denoted as "No. 1 Crane" is in the Raw Material Building, and the crane denoted as "No. 2 Crane" is in the Silicon Mill Furnace Building. These buildings and these cranes are immediately adjacent and contiguous to each other.

That on the morning of November 2, 1962, and for several weeks prior thereto, the said Charles O. Baker, together with other employees of the Towne Construction Company, had been assigned by their immediate supervisor, also an employee of the Towne Construction Company, to the job of installing a furnace and "heat shields" in the Silicon Mill Furnace Building.

While installing these "heat shields" on the morning of November 2, 1962, the decedent, Charles O. Baker, together with fellow employees, was working from the crane bridge of the No. 2 Crane inside the Silicon Mill Furnace Building. This crane was "locked out" with power off and an employee of Towne Construction Company occupying said No. 2 Crane as "Safety Man." The No. 1 Crane located in the Raw Material Building was in operation and had been in operation during the morning and prior to the accident in question.

About 9:30 A. M. on the morning in question the decedent, Charles O. Baker stepped from the bridge of the No. 2 Crane over into the Raw Material Building and was attempting to work while on the rail over which the No. 1 Crane traveled. The nature of the work in which he was engaged at the time to wit: the erection of "heat shields" in the Silicon Mill Furnace Building did not require or necessitate his being on the rail in the Raw Material Building. That in so assuming this position he placed himself in a position of peril, and in so doing failed to use ordinary care for his own safety under circumstances then and there existing. This conduct on the part of the decedent, Charles O. Baker, constituted negligence which directly and proximately contributed to the cause of the accident and directly and proximately contributed to his injuries and subsequent death.

THIRD DEFENSE:

For its third defense to plaintiff's petition, defendant

realleges and incorporates herein as though fully rewritten all of the allegations of its first and second defenses and further says that the decedent Charles O. Baker in assuming the position taken by him on the rail over which the No. 1 Crane traveled in the Raw Material Building, knew or in the exercise of ordinary care should have known that such a position was a perilous one, and likely to result in injuries to himself, and being thus fully aware of the attended circumstances assumed any and all risks of injury to himself. Defendant further says that on the morning in question, prior to commencing the work undertaken, the decedent, together with his fellow workers, was warned by his immediate supervisor against going into the Raw Material Building, and to remain in the Silicon Mill Furnace Building where arrangements had been previously made to shut down the No. 2 Crane. That the decedent, Charles O. Baker, in going over into the Raw Material Building and attempting to work while standing on the rail over which the No. 1 Crane traveled was in violation of an express directive and thereby assumed the risk of any and all harm which might befall him in so doing.

WHEREFORE, defendant prays plaintiff's petition be dismissed at her costs.

### APPENDIX "C"

#### IN THE COURT OF COMMON PLEAS, MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| THELMA V. BAKER, AS THE ADMINISTRATRIX OF THE ESTATE OF CHARLES O. BAKER, DECEASED | : |
| | : |
| | CASE No. 43886 |
| PLAINTIFF | : |
| v. | : |
| | REPLY |
| OHIO FERRO-ALLOYS CORPORATION, | : |
| DEFENDANT | : |

Now comes the plaintiff, Thelma V. Baker, Administratrix of the Estate of Charles O. Baker, Deceased, and

for her reply to the defendant's answer, denies all the allegations thereof which are not admissions of or consistent with the allegations of plaintiff's petition.

WHEREFORE, plaintiff again renews her prayer and demand as contained in the petition.