BISHOP ET AL., APPELLANTS, *v.* PENN. CENTRAL TRANSP. CO. ET AL., APPELLEES.

(No. C-73332—Decided February 11, 1974.)

Messrs. *Brown, Korbee, Cummins & Brown,* for appellants.

Messrs. *Taft, Stettinius & Hollister* and *Mr. Gerald J. Rapien,* of counsel, for appellee Penn Central Transportation Company.

Messrs. *Lindhorst & Dreidame* and *Mr. James L. O'Connell,* of counsel, for appellee Baltimore & Ohio Railroad Company.

*Mr. Edward J. Utz,* for appellee General Motors Corporation.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket and journal entries; the original papers and pleadings from the Court of Common Pleas of Hamilton County; the assignment of error; and the briefs and arguments of counsel.

The singular assignment of error is as follows:

"The trial court committed error prejudicial to plaintiffs in granting the separate motions of the defendants for summary judgment and entering final judgment for the defendants."

Plaintiffs, the appellants herein, sued defendants, the appellees, asking compensation for personal injuries sustained by plaintiff Tony Bishop, and for loss of services, society and consortium.

On February 12, 1969, Tony Bishop fell from the uppermost tier of a tri-level railroad car, thereby suffering his injuries, while unloading a cargo of automobiles.

Defendant General Motors Corporation had contracted with defendant Penn Central Transportation Company to transport the automobiles from Baltimore, Maryland, to Cincinnati, Ohio. Penn Central transported the railroad car from Baltimore to Dayton, Ohio, where it was given to defendant Baltimore and Ohio Railroad, which then brought it to B & O property in Norwood, Ohio, for unloading.

Plaintiff Tony Bishop was employed by Complete Auto Transit, Inc., which is alleged to be an agent of B & O in the handling of its railroad cars and in loading and unloading cargo. Complete Auto furnished Bishop with the special wrench he was required to use to release restraining chains from the undercarriage of the automobiles.

On the day of his fall, Bishop placed the wrench in a socket in a shackle mechanism and exerted pressure. However, the wrench slipped out of the socket and Bishop fell over the side of the car. He was unable to avert the fall because the safety cable which ran along the top deck of the car was not positioned properly. Essentially, the asserted negligence of the defendant is predicated upon the allegedly defective condition of the socket and the improper positioning of the cable.

One of the items considered by the court in resolving the issue before it upon the motions for summary judgment was the deposition of Tony Bishop, taken in two parts. It is apparent that Bishop had at least two years experi-

ence in the work he was doing, that he knew that worn and defective shackles were found frequently, that he was aware that something was wrong with the shackle he was working on at the time he fell, that he knew the safety cable was not in place when he started to unload the car, that he had attempted to raise the cable into place but quit when his efforts were fruitless, and that he did not seek help from other employees nearby to raise the cable or to assist him in releasing the restraining chains.

The several motions for summary judgment are based, essentially, upon identical grounds, it being commonly contended that Bishop's injuries were caused proximately by his contributory negligence and his assumption of the risk. B & O also raised the issue of the applicability of the Federal Employers' Liability Act because plaintiffs had alleged that Complete Auto performed "operational activities and railway functions" of B & O and was, therefore, an "adjunct and agent of" B & O so as to make Bishop an employee of B & O for purposes of the act. General Motors contended, in addition to the basic assertion, that it was relieved of liability by the intervening duty of Complete Auto, the employer of Bishop.

The court below found that the respective motions were well taken and granted them without specification of the ground upon which that conclusion had been made.

We believe that the record establishes conclusively that plaintiff, Tony Bishop, was an employee of Complete Auto Transit, Inc. Bishop admitted that he worked for Complete Auto, that he was paid by it and never by B & O, that Complete Auto withheld local and federal taxes and Social Security, that its foreman directed him and he took no orders from any B & O employee, and that his tools and equipment were supplied by Complete Auto.

Applying the rule of *Winkler* v. *City of Columbus,* 149 Ohio St. 39, we find that Bishop is bound by his admission and the question of whether he was an employee of B & O became one of law to be determined by the court. Our review of the record convinces us that the court correctly determined such issue and that Bishop, as a matter of law,

was the employee of Complete Auto only. See, *Kelley* v. *Southern Pacific Company*, United States Court of Appeals for the 9th Circuit No. 71-2262, decided September 7, 1973.

We have also concluded that General Motors is relieved of liability upon authority of the rule set forth in *Thrash* v. *U-Drive-It Co.*, 158 Ohio St. 465, paragraph 2 of the syllabus, reiterated in *Hurt* v. *Transp. Co.*, 164 Ohio St. 323:

"Where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could have or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency."

It is clear that the only connection that General Motors had with the matter at bar was to have manufactured and contracted for the shipping of the automobiles which Bishop was employed by Complete Auto to unload. Whatever occurred can not be said to be the basis for liability on the part of General Motors.

Turning to the basic and fully determinative issue of contributory negligence in this case, we find as follows.

Bishop was aware that the socket was loose, worn or defective in some way as to make it likely that the wrench would slip out of it. He knew that the safety cable was not so positioned as to protect him as was its purpose and that he was working on a narrow ledge at a considerable height. He did not summon available help close by him, something which he had done before, to take some of the tension from the chains holding the automobile in place.

Where even the most favorable interpretation of the evidence indicates that a plaintiff is familiar with the apparatus which he claims to be defective and to have caused him injury and with other perils incident to his use of the apparatus, as Bishop was in this case, he may be charged with contributory negligence as a matter of law because reasonable minds could conclude only that he accepted a

danger he clearly perceived and understood with a foresight of the consequences. We believe that the record fully supports the conclusion that, as a matter of law, Bishop failed to act as a reasonable and prudent man would have acted under the same or similar circumstances. See, *Willis v. Eckart Packing Co.*, 21 Ohio App. 2d 117; *Settles v. Strobridge Lithographing Co.*, 101 Ohio App. 479; *Kafel v. Republic Steel Corp.*, 30 Ohio St. 2d 55.

We have elected to view Bishop's acts as constituting negligence which contributed proximately to his own injury. Nevertheless, we refer the attention of the reader to the remarks of Justice Celebrezze in *DeAmiches v. Popczum*, 35 Ohio St. 2d 180, at 186:

"As this writer views the difference between the two terms, assumption of the risk is based upon the voluntary consent of the plaintiff to meet the risk and take her chances, while contributory negligence is founded upon the failure of a plaintiff to exercise the care of a reasonable man for his own protection. Obviously, there are situations that satisfy both meanings, so that, although they may overlap they are neither inclusive nor exclusive. To the former it would be logical to apply the subjective test or standard, while the latter doctrine is usually tested by the objective method."

Having arrived at the conclusions stated above, we are constrained to hold that the assignment of error is without merit.

Therefore, the judgment of the Court of Common Pleas of Hamilton County, Ohio, is affirmed.

*Judgment affirmed.*

HESS, P. J., SHANNON and PALMER, JJ., concur.